HON. JEFFERSON P. KIDDER. ⎭

THE TERRITORY V. GAY.

1. INSTRUCTIONS: STATUTORY DEFINITION. Giving the statutory definition of manslaughter, in an instruction to the jury, cannot be construed as a command to find a verdict of guilty.

2. INSTRUCTION: NO EVIDENCE TO EXCUSE HOMICIDE. Upon a trial for homicide, the killing by means of a deadly weapon being admitted, and there being *in fact* no legal or competent evidence tending to excuse or justify the killing, it is not error to instruct the jury that "there is no evidence whatever, admitting every word to be true, that will excuse the killing."

3. SAME: VERDICT MUST BE MURDER OR MANSLAUGHTER. There being no evidence tending to excuse or justify the killing, it is not error for the Court to instruct the jury that, "if you regard the oaths you have taken, your verdict must be murder or manslaughter."

4. EVIDENCE: GRADE OF OFFENSE: NOT JUSTIFICATION. It is proper to instruct the jury, that evidence, which only tends to reduce the grade of the offense, is not to be considered by them as tending to excuse or justify the killing.

5. MATTERS OF FACT: INSTRUCTIONS AS TO. Matters of fact, as to which the Court is not permitted to charge the jury, are facts contested, or in some degree sought to be established by evidence. In assuming the non-existence of evidence excluded or not offered, the Court does not invade the province of the jury.

6. ERROR WITHOUT PREJUDICE: EXCLUSION OF EVIDENCE. It must appear that the improper exclusion of evidence may have injured defendant; and when the evidence excluded only tends to reduce the grade of the offense to that of which defendant was convicted, this court will not reverse.

7. DEFENDANT IN COURT: MOTION: NOT NECESSARY. The personal presence of defendant is not necessary on the hearing of a motion to quash the indictment.

*Writ of error to the District Court of Lawrence County.*

THE defendant was indicted in the District Court of Lawrence county, May term, 1878, for the murder of one Forbes. A trial was had in said county in June following, and the defendant found guilty of manslaughter in the second degree. After conviction and sentence an appeal was taken to this court.

*Hugh J. Campbell* and *Gamble Bros.*, for plaintiff in error.

The defendant was indicted for the crime of murder in the District Court of Lawrence county, on the 1st day of May, 1878. He was tried by a jury and found guilty of manslaughter in the second degree. Upon which verdict, judgment of imprisonment was rendered against him, and the defendant has sued out his writ of error from this court, and asks that the judgment be reversed and a new trial awarded him for the following reasons:

I.   The record in this case does not show the personal presence of the defendant: 1st.   When a motion was passed upon by the Court; and 2d, during the trial when the Judge re-called the jury and gave them additional instructions.   This is manifest error on the face of the record.   And unless the personal presence of the defendant does affirmatively appear on the record, judgment will be reversed.   In capital cases the record must show the prisoner's presence at the trial, verdict and sentence, *affirmatively,* or else the error will be *fatal.*   And this is true where corporal punishment may be inflicted.   (3 Wharton Crim. Law, § 3364, and cases cited; id. § 2991 and 2999; *Daugherty v. Commonwealth,* 69 Penn., 286; *Long v. State,* 52 Miss., 23; *State v. Brannschwieg,* 36 Mo., 397; *Stubbs v. State,* 1 Hawley C. R., 648.)

The record in the above class of cases must not only show the personal presence of the defendant, but he must in *fact* be present at the trial, including the charge of the Court, and this cannot be waived by counsel or the prisoner himself.   (*Maurer v. The People,,* 43 N. Y.; *The People v. Perkins,* 1 Wend., 91; *The People v. Cohlen* 5 Cal., 72; *The People v. Trim,* 37 Cal., 274.)

. II.   The charge of the Judge was clearly erroneous in the following particulars among others:   The Court in effect *commanded* the jury to find a verdict of guilty, and thereby took away from them the exclusive right to pass upon the guilt or innocence of the defendant.   The Court told the jury:

"Here, then, you will discover, the killing being admitted, as in the present case, it is not necessary for you to find that the prisoner intended or designed to take the life of the deceased.   If you find that the killing was with a dangerous weapon, then the defendant is guilty of manslaughter, unless you find, from the evidence, that the killing was done under such circumstances as to make the killing justifiable or excusable."   And the Judge again told the jury:

"I say to you, as a rule of law, and by which, if you regard the oaths you took on entering the jury box, you are bound, there is no evidence whatever admitting every word to be true, that will excuse the killing."

The foregoing language cannot be construed into anything but a *peremptory command* to find the defendant guilty, and is so manifestly erroneous that no authorities can be found to sustain it. But the Court goes still further, and again leaves the jury no choice but to find the defendant guilty:

"The Court instructs you that there is not one word of testimony, that in law, can excuse the defendant for *the commission of the offense;*" and "that the question is, shall the verdict be murder or manslaughter."   And then the Court follows this up with language calculated to enforce this command, and then says:

"In an honest discharge of my duty, I feel compelled to say to this jury what I am not often compelled to say.   Assume the killing and facts necessary for the prosecution to establish, beyond a reasonable doubt, as I have defined doubt to you, then your verdict must be murder or manslaughter.   From that finding you cannot escape.   When I say 'cannot escape,' of course you will understand me as meaning, if you regard the oath you have taken, your verdict must be murder or manslaughter in the first degree."

The jury after receiving the above instructions retired to deliberate on their verdict with the solemn command by the Court that they *must* find the defendant guilty of murder or manslaughter in the first degree, and that from that finding they could not escape. This was manifestly *a fatal error*, and· it was in no manner cured by the Judge re-calling the jury afterwards and telling them they " could bring in a verdict of manslaughter in the second degree;" because the harm previously done the defendant still continued. And this second charge, under the most favorable construction, still deprived the jury of the right to pass upon the guilt or innocence of the defendant, and only gave them an additional right to find another· degree of guilt.

The rule at common law formerly appeared to be that a Judge may express his opinion to the jury in regard to the weight of evidence, (10 Pick, 252.)   This rule has been long ago changed, as well by the current of decisions as by the constitutions and laws of different States.

" The jury," says Chitty, " are as much judges of the fact as the Courts are of the law, and have an absolute power to acquit or convict," (1 Chitty, C. L.,——)   But if there could be any doubt as to the right of the Judge to express his opinion as to the weight or effect of the evidence, it is set at rest by our Statute.   Section 248, page 555, of the Code of Civil Procedure, which section expressly applies to both civil and criminal cases, provides that " the Court in charging the jury, shall only instruct as to the law of the case," and section 377, page 891, Code of Criminal Procedure, provides:   " In charging the jury, the Court must state to them all matters of law," etc., and if it state the testimony of the case, it must in addition inform the "jury that they are the exclusive judges of all matters of fact."

It is clear that the charge is within the prohibition of the foregoing provision of our law.   He may state the evidence to illustrate his charge, but he cannot give his opinion as to the weight of the evidence, or that the evidence does not justify a conclusion that the defendant is not guilty, as was done in this case.   Under a similar provision of the constitution of California, the Supreme Court, in the case of *The People v. Ybarra*, 17 Cal., 166, held that

these provisions are " violated whenever a Judge instructs so as to force the jury to a particular conclusion upon the whole or any part of the case, or to take away the exclusive right to weigh the evidence and determine the facts. The meaning of the provision is that the Judge shall decide upon the law and the jury upon the facts, and that the former shall not invade the province nor usurp the powers of the latter." (See also *The People v. Ah Fung et al*, 16 Cal., 137.)

And the Supreme Court of Massachusetts, construing a Statute like ours, and exactly similar to the constitution of California, in the case of *The Commonwealth v. Barry*, 9 Allen, 279, say: "It is to be construed so as to prevent courts from interfering with the province of juries by any statement of their own judgment or conclusion upon matters of fact."

In the case of *The State v. Duffy*, 6 Nevada, 139, the Court below charged the jury: "In this case the guilt of the defendant rests upon what is known as circumstantial evidence," etc. The Supreme Court, under the same constitutional provision as California, hold that "the court below directly and unequivocally assumes the guilt of the defendant," and that it is an assumption of the establishment of all the issues against him, and reversed the case. (See also *The State v. Ah Tong*, 7 Nev., 152; *The State v. Kenedy*, 7 Nev., 374; *The State v. Harkin*, 7 Nev., 377; *The State v. McGinnis*, 5 Nev., 339; *The People v. Bonds*, 1 Nev., 35.)

In *The State v. Ah Tong, supra*, the Supreme Court say: "Under our practice the Judge should intimate no opinion upon the facts." In *The People v. Bonds, supra*, the Court say to the jury: "This idea of an accident which has been argued by the defense, amounts to nothing and is not tenable. There is no evidence to show it was an accident; on the contrary, it shows there was a scuffle, and that the defendant persisted in holding on to the pistol:" *Held*, erroneous. It took from the jury the determination of a fact peculiarly within their province to determine.

In the case of *Horn v. The State*, 1 Kan., 71, the Court below charged the jury "that the woman and this defendant might both be guilty of *this murder*." In regard to this charge the Supreme Court, say: "The first duty of the jury was to decide whether a

murder had been committed.    This duty was forestalled by the by intimating that *this* was *murder*.    If it be considered as presenting the facts, or suggesting a conclusion from facts, it is equally error.    If the first, it is error because the jury were not informed that they were the exclusive judges of the facts.    If the second, it is error, because it was intimating a conclusion from facts, which is the special and exclusive province of the jury.    All persons, familiar with the trial of criminal causes, have had occasion to observe with what anxiety a jury listens to catch the slightest indication of its views."

So carefully do the courts of California protect the right of the accused, that in the case of *The People v. Williams*, 17 Cal., 142, they reverse the case, because the Judge in charging the jury spoke of the deceased as "his" (defendant's) "victim."    The Court say : "When the deceased is referred to as *a victim* the impression is naturally created that some unlawful power or dominion had been exerted over his person, and it was clearly equivalent, in effect, to an expression characterizing defendant as a criminal." "A Judge cannot be too cautions in a criminal trial in avoiding all interference with the conclusions of the jury upon facts, for of this matter, under our system, they are the exclusive judges." (See also on this point *The People v. Strong*, 30 Cal., 158 ; *The People v. Lewison*, 16 Cal., 100 ; *The People v. Carabin*, 14 Cal., 438.)

In the case of *Burdick v. The People*, 58 Barb., 60, the Judge charged the jury as a matter of law, that the homicide was not justifiable even if the jury believed the facts and circumstances at the time and before the firing of the pistol which produced it, were as stated by the prisoner in his testimony.    "This," the Supreme Court in reversing the case, say "took the question from the jury entirely.    It was clearly a question of fact for the jury, and not a question of law for the Court."

In the case of *McNevins v. The People*, 61 Barb.. 307, the charge of the Judge restricted the jury in the event of conviction, to murder in the first degree, or manslaughter in the third degree. The general term, without reviewing the evidence, held this to be erroneous to the prejudice of the prisoner, and quoting *Gardener v. The People*, 6 Park. C. R., 180, lay down as the correct rule, the

language of Justice Balcom. He says: "I am not permitted to say to you, as a matter of law, that you cannot or have not the right to find the prisoner guilty, upon the evidence, of either of the particular offenses for which he may be found guilty under the indictment. Nor have I the right to say to you that, upon the evidence, the prisoner is guilty of murder in the first degree, if guilty at all, or of murder in the second degree, if guilty at all, or of manslaughter in any or either degree, for it is not the province of the Court to construe evidence. It is the duty of the jury to construe evidence."

In the case of *Pfomen v. The People*, 4 Park. C. R., 591, the Judge who presided at the trial, stated that if they (the jury) believed the witnesses, they should convict of manslaughter, but it was for them to say in what degree. The general term hold this to be error, and say "it was purely a question of fact for the jury to determine as to whether a case of manslaughter had been proved." And the Court further say, "to uphold the charge in this case would be to sustain a principal, the effect of which would be to substitute the Court for the jury."

And in the case of *The People v. Quinn*, 1 Park., 343, the following charge to the jury in a case of murder was held to be erroneous: "I see no ground to warrant you in finding the defendant guilty of manslaughter, but in my judgment he is then guilty of murder."

In the case of *Bond et al v. The People*, 39 Ills', 26, the Court below charged the jury, "if the jury believe, from the evidence, that B. and S. were together, and acted in concert at the time of *the assault to murder was made*, they should find them equally guilty." The Supreme Court in reversing the case, say: "The objection to this charge is obvious." "It amounts to a finding by the Court of the very fact the jury were to try."

If the foregoing charge was error, as it certainly was, then the following charge of the Judge in this case was erroneous beyond a doubt. "The Court instructs you that there is no word of testimony, that in law, can excuse the defendant for the *commission of the offense*."

The doctrine contended for by the plaintiff in error in this case is clearly laid down in Pennsylvania. In the case of *Lane v. The*

*Commonwealth*, 59 Penn., 373, which was a case of poisoning, the Court charged the jury that "the life or death of this man is in your hands; there is no middle course; he *must* be convicted of ·murder of the first degree, or acquitted of everything." "If your verdict is guilty of murder, you must state of the first degree. If not guilty, you say so, and no more." It was claimed by the prosecution in this case that where the facts bring the case within either of the modes of killing declared murder in the first degree, it being the *duty* of the jury to find a verdict in accordance therewith, a peremptory direction to find that degree is proper. But the Supreme Court hold that to admit this would be to substitute a Court to do that which the law says the jury shall upon *their* oaths do, and they held the charge erroneous. And in the same case the Court cites *Rhodes v. Com.*, 12 Wright, which was murder committed in perpetrating robbery. In that case the Judge charged the jury that "if you find the defendant guilty your verdict *must* state guilty of murder in the first degree, in manner and form as he stands indicted. If not guilty, your verdict will simply be not guilty." But the Supreme Court reversed the sentence, because this charge withdrew the point from the jury and decided it himself. (See also *Benedict v. The State*, 14 Wis., 462; *Noland v. The State*, 19 Ohio, 131; *Bell v. The People*, 14 Ills., 432.)

III. The Court erred in excluding the evidence offered by the defendant, mentioned in the third, fourth, fifth and sixth assignments of error. The note was certainly competent evidence to go to the jury as a part of the *res gestæ*. The witnesses on the part of the prosecution testified as to the defendant showing the deceased a note, and of a conversation between them concerning it. The defendant, thereupon, had the clear right to offer the note in evidence as a part of the difficulty. (Greenleaf on Evidence, § 108, and note and authorities cited.)

The defendant having the right to introduce the note in evidence for the above reason, he therefore had a clear right to also introduce in evidence all the facts and circumstances identifying the note, and to show that the deceased wrote it and sent it to defendant's wife; that defendant knew it; that he came to the

place of the homicide with the facts concerning the note on his mind. All this evidence the jury were clearly entitled to, and to exclude it was error.

IV. It was error in the Judge to compel the defendant to exercise any of his peremptory challenges without a full panel in the box. Our Statute in regard to challenges, and the formation of the petit jury is almost an exact copy of California, and it will not reasonably admit of different rule of construction as to having twelve jurymen in the box before the defendant is compelled to challenge. *The People v. Scoggins*, 37 Cal., 676 ; *Taylor v. W. P. R. R. Co.*, 45 Cal., 330 ; *The People v. Russell*, 46 Cal., 122 ; *Lamb v. The State*, 36 Wis., 424.

V. 1. The Court below erred in charging the jury as set out in the eleventh assignment. It does not follow as a matter of law, that because the killing was admitted, it was not necessary for the jury to find that the prisoner intended to take the life of the deceased. This is clear error. No such conclusion follows from the admission of the fact of killing.

2. The Court below erred in charging the jury as set out in the thirteenth assignment. The Judge had no right to use the expression, "*the commission of the offense.*" This was expressly assuming the defendant's guilt, and was clearly erroneous. (*Horn v. The State, supra; The People v. Williams, supra; The People v. Yebarra, supra.*)

VI. When error is shown, as we submit it has been done in this case, the burden rests upon the prosecution in whose behalf it was committed, to show that it could not have injured the defendant. (*The People v. Williams, supra; The People v. Strong*, 30 Cal., 158.)

*A. W. Hastie*, District Attorney, for defendant in error.

### DEFENDANT'S PRESENCE IN COURT.

I. The defendant's presence cannot be exacted as an absolute rule during the making and arguing of motions. (3 Wharton, § 2994 and § 2998 ; *The People v. Petry*, 2 Hilton, 523 ; *Fight v. The State*, 7 Ohio, 180.)

The error must appear affirmatively on the record. The proceedings of courts are presumed to be regular and legal until the contrary be shown. (*The People v. Bealoba*, 17 Cal., 389; *The People v. Robinson*, 17 Cal., 371; *McIntyre v. The People*, 38 Ills., 514; *The People v. Blackwell*, 27 Cal., 66; *The People v. Richmond*, 29 Cal., 415; *The People v. Connor*, 17 Cal., 354.)

### EXCLUDING TESTIMONY.

II. No words will justify an assault, nor indecent provoking actions or gestures expressive of contempt or reproach, without an assault upon the person. Great provocation, and such as must have greatly provoked him, can only reduce the killing to manslaughter. (2 Wharton, § 970 and § 1253; Wharton on Homicide, § 168.) Certainly if evidence of threats by the deceased, are offered to prove that the defendant had a right to kill the deceased, there being no proof of a hostile demonstration by deceased, then it is irrelevant. (Wharton on Homicide, § 694.)

### JUDGE'S INSTRUCTIONS.

III. The Judge is entitled to give his opinion on the evidence commenting as much thereon as he deems conducive to the interests of justice. (3 Wharton, §§ 3163, 3254 and 3280; Dak. Statutes, p. 891, § 377, and p. 886, § 343 (6), also p. 892, § 384; *The State v. Susan B. Anthony*, for illegal voting—decision by Judge Hunt of the U. S. Supreme Court at Canandaigua, N. Y., in June, 1873, reported in 1 Wharton, p. 82.)

To determine the correctness of the charge to the jury, its different parts must be considered in their relations to and with each other. (*The Territory v. Chartrand*, 1 Dak., 379; *The People v. Odel*, 1 Dak., 197; *The People v. Bagnell*, 31 Cal., 409.)

On a trial for murder, if there is no evidence tending to establish the crime of manslaughter, the Court may so inform the jury and charge them not to consider the question. (*The State v. Donovan*, 10 Nev., 36; *The People v. King*, 27 Cal., 507; *Conraddy v. The People*, 5 Parker's Crim. R., 243; id. *Jeffreds v. The People*, 522.)

In the trial of a person indicted for murder, the Court may, by suitable instructions, if the evidence will warrant it, direct the jury

that the case as made out by the evidence is one of murder in the first degree ; and if the evidence is believed will not warrant a verdict for murder in the second degree, or for any of the degrees of manslaughter, such an instruction is no invasion of the province of the jury, nor can it be regarded as a comment on the evidence. (*The State v. Schoenwald*, 31 Mo., 147, 157–8–9 ; *The State v. Starr*, 38 Mo., 270 ; *The State v. Dowd*, 19 Conn., 388 ; *Lane v. The Commonwealth*, 59 Penn., 371 ; *The State v. Joeckel*, 44 Mo., 234 ; *The State v. Byrne*, 24 Mo., 151 ; *Shaffner v. The Commonwealth*, 72 Penn., 60.)

Erroneous instructions given by the Court are not sufficient reasons in themselves for a new trial, unless the defendant's rights have been prejudiced thereby. (*Smith v. The State*, 28 Ind., 321 ; *Durkee v. Marsh*, 7 Wend. (N. Y.) 312.

An expression of opinion simply by a judge upon a question of fact is not a ground of error. (*Transportation Line v. Hope*, 5 Otto, 297 ; *Durkee v. Marshall*, 7 Wend., 312 ; *Dow v. Bush*, 38 Barb., 157 ; *Powell v. Jones*, 28 Barb., 24 ; *Corning v. Troy Iron and Nail Factory*, 44 N. Y., 577.)

It is the duty of a Judge in the trial of a criminal case to instruct the jury on all the law arising in the case, and it is the duty of the jury to respect the instructions of the Court on the law of the case. (*The State v. Schoenwald*, 31 Mo., 147, 157–8–9 ; *The State v. Starr*, 38 Mo., 270.)

An instruction that defendant "had no right to do" certain specified things, does not assume that he did them, or take the question of fact from the jury. (29 Wis., 254.) It is the duty of the Court to say, as a matter of law, what fact or facts will amount to sufficient legal provocation, if they are found by the jury. In other words, it is for the jury to find what the facts are, and for the Court to say what effect shall be given to them. (*Lynch v. The Commonwealth*, 77 Penn., 205, 212–13 ; *The State v. Underwood*, 77 Penn., 253.)

" Jurors are so apt to lean away from a verdict of murder in the first degree, we must not scan too critically the language, if he has left them free to find the degree of the murder on the evi-

dence." (Wharton on homicide, § 186; *The State v. Dowd,* 19 Conn., 388; *Shaffner v. The Commonwealth,* 72 Penn., 60.)

### WRITTEN INSTRUCTIONS.

There was no request that the instructions be reduced to writing before given; and, furthermore, it appears from the record that a stenographic reporter was present, and took a full report of all the proceedings of the trial. The error must appear affirmatively on the record. Statute, p. 886, § 343 (6); *The State v. Bealoba,* 17 Cal., 389.)

### THE JURY—CHALLENGES.

The challenge must be taken when the juror appears, and before he is sworn; but the Court may, for good cause, permit it to be taken after the juror is sworn, and before the jury is completed. The record shows that no reasons were given for the challenge. (Statute, p. 884, § 324.)


BARNES, J.—The second paragraph of the following instruction is assigned as a specific ground of error by the appellant:

" Homicide is manslaughter in the first degree, when perpetrated without a design to effect death, and in a heat of passion, by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide.

" Here, then, you will discover the killing being admitted, as in the present case, it is not necessary for you to find that the prisoner intended or designed to take the life of the deceased. If you find the killing was with a dangerous weapon, then the defendant is guilty of manslaughter, unless you find from the evidence that the killing was done under such circumstances as to make the killing justifiable or excusable."

We here observe that defendant's counsel, in their brief and in their assignment of error, have detached the second paragraph of the instruction from the first, to which it directly refers, and then allege as error that the Court commanded the jury to find a verdict of guilty, and thereby took away from them the exclusive right to pass upon the guilt or innocence of the defendant.

This is an attempt to mangle the instruction. As to the most casual observer, the words " here then you will discover," as used in the second paragraph of the instruction, is giving the statutory definition of manslaughter in the first degree—no more, no less; and in this we discover no command. The Court then proceeds and declares the law with reference to excusable homicide as follows:

*First*—When committed by accident or misfortune, in lawfully correcting a child or servant,.or in doing a lawful act by lawful means.

*Second*—When committed by accident or misfortune, in heat of passion, upon a sudden combat, provided no undue advantage was taken, or a dangerous weapon used. And in explaining the law in excusable homicide the Court made use of this language: " I *say* to you as *a rule of law*, and by which, if you regard the oath you took on entering the jury box you are bound, there is no evidence whatever, admitting every word to be true, that will excuse the killing."

And here again it is claimed by the plaintiff in error that the language thus used is a peremptory command to find the defendant guilty.

We do not thus understand the instruction. The law very clearly defines what facts will excuse the homicide, and the Court, at the close of the testimony, declares to the jury: · " There is no evidence establishing or tending to establish any fact that will excuse the homicide." Other similar instructions were given, presenting substantially the same questions.

The question as to whether this instruction was erroneous or not depends upon the further question, as a matter of fact, was there evidence tending to excuse the homicide? If there was, it was error not to have submitted it to the jury. · If there was no legal or competent evidence tending to excuse, then the Court properly declared the law, and as none is suggested for the consideration of the Court, tending to justify or excuse, and as counsel upon the argument, when their attention is called to the importance of this question, concede that they are unable to point out evidence which, if true, will excuse or tend to excuse the homicide,

we think the law fairly stated by the Court below, and that no error was committed.

In other portions of the instructions the Court below distinctly stated to the jury there was no evidence to excuse or justify the homicide; and, as a conclusion of law, there was no legal or competent evidence to be considered by the jury upon the question of excusable or justifiable homicide.

It is claimed by appellant's counsel that this is an invasion of the province of the jury. This, like the preceding alleged error, depends upon the question, was there evidence to justify or excuse, or tending to excuse? If there was no competent evidence, then there was nothing for the jury to consider.

It is strenuously urged by the plaintiff in error that the Court erred in giving the following instruction:

"Assume the killing, and facts necessary for the prosecution to establish beyond a reasonable doubt, as I have defined doubt to you, then your verdict must be murder or manslaughter. From that finding you cannot escape. Of course, when I say 'cannot escape,' you will understand me as meaning, if you regard the oath you have taken, your verdict must be murder or manslaughter."

It is urged with great earnestness by defendant's counsel that this was a positive command to the jury to find the defendant guilty of murder or manslaughter. This is not a logical deduction from the instructions. The Court distinctly called the attention of the jury to the facts necessary for the prosecution to establish, as outlined and defined in the preceding instructions, the test to be applied in determining the various propositions that the prosecution must establish, and then declared to the jury, as the law applicable to this case:

"*These essential prerequisites being established,* your verdict must be murder or manslaughter; or, in other words, if the prosecution has established the defendant's guilt, there being no evidence, not one word, tending to justify or excuse, therefore, if you act upon the evidence, as by your oath you have declared that you would, your verdict must be murder or manslaughter; or, more succinctly stated, if the defendant, in open court and to Court and jury, has

The Territory v. Gay.

voluntary admitted the killing of the deceased, and all such other facts as are incumbent upon the prosecution to establish, there being no evidence to justify or excuse, the law requires of you a verdict of guilty of murder or manslaughter."

This statement of the case suggests the inquiry: Did the Court below, in so pronouncing the law, infringe upon the right of the jury? Clearly not. It is the duty of the Court to determine, as a question of law, what testimony and what evidence is proper and competent to be submitted to the jury. It is the duty of the jury to determine what facts are established by the evidence thus submitted or permitted to go to the jury. The Court declares the law; the jury ascertain the facts; and, having done so, are legally and morally bound to pronounce a true verdict. The appellant's counsel do not complain that the verdict in this case is not a true verdict, but they insist that in all criminal cases the jury has the power to pronounce a verdict of not guilty, and that the Court cannot refuse to receive the verdict, and in this respect the statement of appellant's counsel is true, as a matter of fact; in other words, the jury has the physical power to disregard the evidence, to disregard the law as given by the Court, to disregard the solemn oath they have taken, and to pronounce a verdict that is false in fact, and the Court is powerless to correct their wrong, and must receive the verdict. Was that physical power taken from the jury in the case at bar? We think not. Their duty was clearly pointed out; the law correctly declared, they were admonished to observe the law. They were not divested of their physical power to disregard the defendant's admission of his guilt, and the law of the land as given to them by the Court, and declare a verdict of not guilty, false though it would have been, and the Court would have been bound to receive it.

The counsel for the appellant has referred to, read and discussed the following cases, in support of the position taken by appellant that the Court may not express an opinion to the jury in regard to the weight of evidence, viz: 10 Pick., 252; 1 Chitty Criminal Law, Code of Civil Procedure, 891, § 377. As a rule of law this proposition will not be denied, and this suggests the inquiry, what are questions of fact to be passed upon by a jury? *First,* when

there is a conflict of testimony it is the province of the jury to examine the testimony and determine what facts are proved or disproved; *second,* where there is evidence tending to prove or disprove a material fact or issue, it is the province of the jury to determine whether the evidence submitted to the jury proves or disproves the facts sought to be established. It is in no sense expressing an opinion upon a question of fact for the Court to take from the consideration of the jury evidence not proper or competent, or not tending to establish the fact sought to be established.

It may be proper that we here definitely understand the status of this case as presented. At the close of the testimony on the part of the prosecution, and also at the close of the testimony on the part of the defense, and first, when the testimony on the part of the prosecution was closed, the charge of murder was quite conclusively established. The defense then, among other witnesses, placed upon the stand the defendant. He admits the homicide, but seeks to justify, excuse, or mitigate the offense; and, among other things, states that he did not design or intend to take the life of Forbes. He states that he was excited; that he was very angry; that he threw off his coat for the purpose of giving Forbes a whipping. He further states that a third party interfered; that he then drew out his revolver and told this man to stand back, as he knew nothing about it; that at this time Forbes was standing two or three feet away; that he then struck Forbes two or three times over the head; that the last time the pistol came down it went off; that his intention was to hit deceased two or three times over the head and let him go. Here we remark there is no evidence to show that, from the commencement to the end of this affray, the deceased had uttered an insulting word; that he had raised a hand either to defend himself or attack defendant. Assuming that Gay, and the witnesses on the part of the defense, stated the exact truth, there does not appear to be the slightest testimony tending in the least to justify or excuse the homicide.

The testimony of Gay and some other witnesses tended slightly to mitigate, and possibly to reduce, the offense from murder to manslaughter. It would have been error, therefore, to have ex-

cluded this testimony from the consideration of the jury. The Court below having considered this testimony, applying the rule of law, declared to the jury that there was not one word of testimony that would justify or excuse the homicide, and thus took this evidence from the consideration of the jury, except so far as in their judgment it might tend to mitigate or reduce the grade of the offense. Was this taking from the jury the consideration of any fact proper to be determined by the jury? We think not.

In the case of *The People v. Sanches*, 24 Cal., 17, the defendant was indicted for murder; by the jury found guilty, and an appeal was taken to the Supreme Court.

In the court below the Judge was asked to instruct the jury as to murder in the second degree, and manslaughter, which instruction the Court refused to give. The Supreme Court say this request was properly refused; that no instruction should be given to a jury which is not predicated upon some theory logically deducible from at least some portion of the testimony. Again, in this same case, the Court says there are certain kinds of murder which carry with them conclusive evidence of premeditation. These cases are of two classes: *First*, where the killing is perpetrated by means of poison. Here the means used is held to be conclusive evidence of premeditation. The *second* is where the killing is done in the perpetration, or the attempt to perpetrate, some one of the felonies enumerated in the Statute. Here the occasion is made conclusive evidence of premeditation. When the case comes within either of these classes the test question, is the killing willful, deliberate, and premeditated, is answered by the Statute itself, *and the jury have no option but to find prisoner guilty of murder in the first degree.* The deduction from this authority is this: where the killing is perpetrated by means of poison, or where the killing is perpetrated in an attempt to commit some one of the felonies enumerated in the Statute, the law itself declares the existence of premeditated design to murder; and when the case comes within either of these classes the jury has no option but to find the prisoner guilty of murder in the first degree. To say to the jury, you have no option but to declare the prisoner guilty of murder in the first degree, without

qualification, is using much stronger language than to say to the jury, assume the killing to be established, there being no evidence to justify or excuse, if you regard the oath you have taken your verdict must be murder or manslaughter. Has it occurred to counsel that by bringing the evidence in this case, by bill of exceptions, before this court, as well as by admission upon the argument, they have furnished this court with indubitable evidence that there was neither excuse nor justification for the homicide; and that when they urge that the defendant has been prejudiced by the instruction to the jury, they are here asserting that the Judge was a usurper in properly declaring the law, and admonishing the jury that they must observe it or they' would be violating their oath ? Juries should plainly understand that they must respect the law, and that their verdicts must be based upon the evidence, and that when they depart from this rule their moral turpitude is no less censurable than that of the Judge who wantonly sets at defiance the law he has sworn to observe. The fact that the jury has the physical power to pronounce a verdict, false in fact, in no way justifies their moral delinquency in so doing.

In *The People v. Estrand*, 49 Cal., 171, the defendant was convicted of murder in the county of Sacramento, and sentenced to be hung, and by appeal the case was removed to the Supreme Court of California. The Court below was asked to instruct the jury as to what constituted manslaughter, which request was refused. McKenstry, Justice, in delivering the opinion of the Court, says: ".There was some evidence, which, if true, would tend to establish the innocence of defendant, but there was no evidence on which the jury could have properly found that the killing was done in a heat of passion, therefore the refusal to instruct the jury as to what constituted manslaughter was not error." In this case the Court determined there was no evidence as to heat of passion, and would not permit the jury to consider the question of manslaughter. In the case at bar the Court says there is no evidence to justify or excuse, and will not permit the jury to consider that question.

In *The People v. Turley*, 50 Cal., 469, the defendant was convicted

of murder in the first degree, in the District Court of California. After judgment an appeal was taken to the Supreme Court. The Court says: "It appears, by the bill of exceptions that the homicide was committed by the prisoner with a deadly weapon; that the supposed provocation given by deceased was insulting and abusive language, when very drunk, and when the deceased was walking away from him." The jury found the prisoner guilty of murder in the first degree, and therefore adjudged him to suffer death. Defendant's counsel in the court below asked the Court to instruct the jury, that if the prisoner did unlawfully but without malice kill deceased upon a sudden quarrel, or in the heat of passion, the killing would not be murder, but manslaughter only. This instruction was refused. The Court says: "The undisputed facts of the case did not warrant such an instruction, and the only purpose it could have served would have been to have turned the attention of the jury from the case before them to an imaginary case not before them." Again the Court says: "The District Court correctly instructed the jury, at the instance of the prosecution, that no words of reproach, howsoever grievous they may be, are sufficient provocation to reduce the offense of an intentional homicide with a deadly weapon from murder to manslaughter."

In this case it is apparent that the Court below, after listening to the evidence and applying the law to the facts of the case, determined that there was no evidence that would authorize the jury to pronounce a verdict of manslaughter; and the Supreme Court declare: "There was no error in such refusal. The evidence in the case is undisputed, and no substantial right of the prisoner has been interfered with. Cause remanded, with direction to fix a day for carrying the sentence into execution."

*The People v. King*, 27 Cal., 507: Defendant was convicted of murder in the District Court, and an appeal taken to the Supreme Court. The following instructions were assigned as error: "In the case that is now being submitted to you there is no evidence on any points or matters given in proof which reduce the crime charged in the indictment to manslaughter. If the defendant be found guilty, therefore, you cannot consider the question of manslaughter upon the evidence in this case."

It was urged that this instruction was erroneous, it determining, as a matter of fact, (which could only be determined by the jury,) that there was no evidence that would reduce the crime to manslaughter. The Supreme Court says: "At common law a Judge is allowed to express his opinion as to the weight of evidence. In this respect the constitutional provision referred to was intended to change the rule so as to leave the weight of evidence entirely to the jury. But the Judge may still, as formerly, state what facts are in evidence, and what are not, which includes the right to state to the jury that there is no evidence as to particular facts or issues, when such is the case."

*The People v. Welch*, 49 Cal., 174: The defendant was tried for the crime of murder in the first degree, found guilty, and from the judgment of the court below an appeal was taken to the Supreme Court. The defendant excepted to the seventh instruction, which, commencing with the words, "in this case, if the killing was willful, (that is, intentional, deliberate and premeditated,) it is murder in the first degree; otherwise it is murder in the second degree." It is urged that this instruction was a violation of the constitution, which reads: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."

This provision of the constitution is equally applicable to civil and criminal proceedings, and in both it may be the duty of the Judge to determine whether there is any evidence to sustain the main issue, or to sustain any facts on which a particular judgment must necessarily depend. Of course such determination should be the result of prudent and cautious examination; but in a proper case the Court may act on the assumption that there is no evidence in respect to a particular issue, and grant a non-suit, advise an acquittal, or frame its charge to a jury without reference to the existence of facts as to which no evidence has been produced. In such case the Court cannot state the testimony, for there is none to state. The matters of fact as to which the Court is not permitted to charge the jury are the facts contested or in some degree sought to be established by evidence. In assuming the non-existence of evidence excluded or not offered, the Court does not

interfere with the discretion of the jury. The prohibition of the constitution cannot be made a means of shielding the District Judges in their refusal or neglect to discharge the duty of giving such instructions and such instructions only as are appropriate to the evidence in the particular case, and thereby aiding the jury in the proper discharge of their functions. It has been repeatedly held by this court that the District Court may properly refuse a charge defining manslaughter, where there is no evidence tending to establish that offense; and that under such circumstances it is no violation of the constitution for the trial court to assume that the offense is not manslaughter. In the present case there is no evidence whatever tending to prove either that the crime was manslaughter, or that the killing was justifiable or excusable. It was not error, therefore, to direct the attention of the jury to the real issue as presented by the evidence.

Was the killing the first or second degree of murder?

*The People v. Dick*, 34 Cal., 663: The defendant was convicted of murder in the first degree, in the District Court. By appeal, after judgment, the case was removed to the Supreme Court. The District Court stated to the jury: "Aside from the evidence of the defendant himself, there is no evidence whatever of any person being present at Simpson's cabin at the time Simpson was killed, other than Simpson and this defendant."

It is urged that this is a fact to be determined by the jury, and that the instruction is in violation of Article 7, of the constitution of California. Upon this question the Supreme Court in this case holds: "The constitution does not prohibit the Judge from stating the evidence in his charge, and the right to state the evidence includes the right to state that there is no evidence as to particular facts. Hence, to so state may or may not be error; and whether it is or is not, can be determined only upon an inspection of the testimony. When the appellant relies upon such statement as error, he must bring up so much of the evidence as proves or tends to prove the fact or facts in question, otherwise than stated by the Judge. In other words, the error is not in stating there was no evidence upon a given proposition, but depends upon the further question, as a matter of fact, was the instruction of the Judge that there was no evidence, true?"

*The People v. Brothertown*, 47 Cal., 388: The defendant was convicted of forgery in the municipal court, San Francisco; after judgment, by appeal taken to Supreme Court. The Court says a bill of exceptions showing error in the exclusion of evidence on a trial in a criminal case, must also show that the excluded testimony was material to the defendant, and that he was injured by its exclusion, or the judgment will not be disturbed. All intendments are in support of the judgment in criminal cases, so far as such intendments are consistent with the record.

It may be well here to note the fact that when the indictment charges an accused with murder, the plea of not guilty, permits the defendant to give in evidence such facts as will justify the homicide; such facts as will excuse the homicide; such facts as will reduce the homicide from murder to manslaughter in the first or second degree. In other words, the plea of not guilty presents four separate issues, which should be kept in mind in applying the foregoing authorities to the case under consideration, and thus applying the authorities the following propositions are established:

*First*—The Court may not express an opinion on questions of fact.

*Second*—Questions of fact of which the jury are the exclusive judges, under section 377, page 891, Revised Codes of Dakota, (which are substantially the same as the Penal Code, and the constitutional provision of California,) refer to such facts, and such facts only, as are contested, disputed, or sought to be established by evidence.

*Third*—The Statute does not change the common law rule, except as to disputed or contested questions of fact.

*Fourth*—It is within the province of the Court, and often the duty of the Court, where separate and distinct issues are presented, to direct the attention of the jury to the evidence that is competent as tending to prove certain specific facts or issues; and when there is no legal evidence tending to establish a particular issue or defense, it is the duty of the Court, in instructing the jury, to so declare the law; and this is not an expression of opinion upon a matter of fact within the meaning of the Statute above referred to.

In the case under consideration, there being no evidence tend-

ing to justify or excuse, the Court properly so declared. The law defines what facts will justify or excuse a homicide, and the Court must determine, as a legal proposition, what evidence is competent as tending to establish such facts; and the Court having instructed the jury that there was no evidence to be considered by them tending to justify or excuse, manifestly, then, the only remaining question for the jury to determine was as to the grade of the offense—was it murder, or were there extenuating circumstances that would reduce it to manslaughter?

That issue or question was properly submitted to the jury. That jury was under solemn obligations to pronounce a truthful verdict, in accordance with the evidence. The Court had taken from their consideration all questions pertaining to justification or excuse. The defendant, in open court, in the presence of the jury, had admitted the homicide, and we are entirely at a loss to know by what process of reasoning the appellant's counsel can claim that the jury could have found otherwise than that the defendant was guilty of murder or manslaughter, except by the exercise of physical power, and an utter disregard of their oath.

Another alleged ground of error is the exclusion from the consideration of the jury of a note or writing in the words following:

" Mrs. Gay—*My Darling:*
 " Meet me by moonlight alone."   [Signed by a fictitious name.]

There was evidence tending to prove that deceased wrote and sent the note, and that at the commencement of the difficulty terminating in the death of Forbes, defendant charged deceased with the writing of the note. We incline to the opinion the note was a part of the *res gestæ*, and that it was error to exclude it.

It is not enough, however, that the Court should improperly exclude evidence; we must be able to see that the exclusion of the evidence may have injured defendant.

In this case it could by no possibility have prejudiced the defendant; the only effect of the excluded testimony, if received, was to reduce the offense from murder to manslaughter. It in no way tended to justify or excuse, and as defendant was convicted of manslaughter it is clear he was in no way prejudiced by the exclusion of the testimony. *Yankton County v. Rossteuscher*, 1 Dakota,

125; *The People v. Brothertown,* 46 California, 388, heretofore referred to.

Another ground of error urged by the appellant is, that the record does not show personal presence of defendant: *First,* when a motion is passed upon by the Court; and, *second,* during the trial, when the Judge recalled the jury and gave them additional instructions. The answer to this question is—*First,* as a matter of fact the record does disclose the personal presence of the defendant at the time the jury were recalled and additional instructions given; that he then and there took exception to the recalling of the jury by the Court;· and as to the other proposition, that the defendant was not personally present when a motion was made to quash the indictment, we answer, no law has been referred to, nor are we aware of any requiring the personal presence of the defendant upon the argument of a motion. The Statute of this Territory provides that when the indictment is for a felony, the defendant must be present and plead in person. (Revised Codes, p. 874, § 237.) Section 294, Criminal Procedure, provides that the defendant must be personally present at the trial. Section 343, Criminal Procedure, provides that the trial shall commence when the jury is impanelled and sworn. The defendant must also be present at the rendition of the verdict. (Section 391, Code of Criminal Procedure.) Section 437, Code of Criminal Procedure, requires the personal presence of the defendant when judgment is pronounced against him.

The Legislature of this Territory having thus provided that the defendant shall be personally present at certain specified times before and after the trial, as well as during the trial, we see no reason for holding the defendant's personal presence necessary at a time other than those prescribed by the Statute. We the more readily come to this conclusion from the fact that his presence at other times appears to be unnecessary.

Discovering no error in the proceedings in the court below the judgment of the District Court is

AFFIRMED.

All the Justices concurring.