## Taylor *versus* The Commonwealth.

*Court of Error, when confined to the Record of the Court below.—
Legal Presumption in favour of Record in Criminal Cases under
Revised Penal Code.*

1. The true record of a criminal case is the history of the proceedings constituting the trial and judgment, recorded in the known and authorized record book of the court; and it cannot be contradicted by the minutes of the clerk from which it is made up.

2. As in criminal cases the inquiries of a court of error are confined to the record, it is incumbent on the plaintiff in error to show by the record that errors were made upon the trial, in order to overcome the presumption that no errors were committed; and if none such appear, that presumption has the more force, since under the new Penal Code every denial of a right to the prisoner can be made to appear on the record, and be brought up for review on writ of error.

3. Where the record of a conviction for murder showed that the prisoner had been brought into court and arraigned, and that he pleaded, and issue having been joined, was remanded to jail; that on the next day, the court being in session, he was again brought in by the sheriff, and that the clerk was ordered to draw a jury from a box containing the names of jurymen summoned and in attendance, and did so call a jury, the prisoner having had his proper and legal challenges; that the jury came, to wit, &c., "twelve good and lawful men, summoned and returned, impannelled and sworn," who, on another day named, the prisoner "being present in court," found him "guilty of murder in the second degree, in manner and form as he stood indicted," whereupon he was remanded to jail by the court; that on the next day, he was brought into court, and "having been asked if he had anything to say why sentence should not be passed upon him," and "having said that he had nothing to say other than he hath said," the court thereupon passed sentence:—such record is substantially sufficient, though it do not give the adjournments from day to day, nor affirmatively show that the prisoner had an opportunity to poll the jury; and, though the arraignment of the prisoner and the drawing and impannelling of the jury were recorded by the clerk in the past tense.

ERROR to the Court of Oyer and Terminer of *Mercer county*.
Dennison Taylor was indicted and tried at the January Term

[Taylor *v.* The Commonwealth.]

of said court, 1862, for the murder of George Jackson, was convicted of murder in the second degree, and sentenced to imprisonment in the Western Penitentiary, at solitary confinement and hard labour, for a period of eleven years and six months.

Under the provisions of the Revised Penal Code, this writ was sued out by the prisoner, for whom the errors which are referred to and answered in the following opinion were assigned.

The opinion of the court was delivered, May 14th 1862, by

THOMPSON, J.—This is a common law writ of error, and brings up the record of the trial and conviction of the plaintiff in error for the murder of one George Jackson, of the county of Mercer, on the 22d of October 1861. The conviction was of murder in the second degree, upon which he was sentenced to solitary confinement at hard labour, in the Western Penitentiary, for the full maximum period for the first offence of this kind, viz., eleven years and six months.

No allegation is made that the prisoner had not a full, fair, and impartial trial by a jury of the vicinage, aided by counsel, and presided over by a competent and legally constituted court; nor that every constitutional and legal right was not accorded to him to the fullest extent. But the complaint is, that it does not appear by the record that he had these constitutional and legal rights accorded to him, and I agree that if this were true, the conviction could not stand. In order to ascertain how this is, we must apply ourselves to ascertain what is the record. Is it the minutes of the clerk, or the record presumed to be made up by the court, containing a short and distinct history of the proceedings constituting the trial and judgment, and kept among the records in the well-known and authorized record-books? If it be not the latter, there is no safety in records, and their imputed absolute verity would be a mere abstraction, meaning nothing, and resting only on a duty to believe in them. When, therefore, a record is made up, the elements constituting it are not suffered to contradict it. Neither the knowledge of the court nor the minutes of the clerk can avail for this. Either one of them or both together may suffice to correct it, if resorted to in proper time, but the elements so used to correct become the record, and are no longer the recollection of the court, or the minutes of the clerk.

Now, we have here a complete record of the court, and also the minutes of the clerk, from which it is to be presumed the record was made up, and it is claimed that the latter may not merely explain but contradict the former; that we must consult the inorganized and informal matter, and so set aside the organized, approved, and formal record; that is to say, attack and overturn the record by something less than the record; overthrow

[Taylor *v.* The Commonwealth.]

absolute verity by that which imports no absolute verity. To state the proposition is to demonstrate its fallacy.

Now, what does the record of the court and its legal and necessary intendments show? First, that on the 21st of January 1862, the prisoner was brought into open court, and being arraigned, did for himself plead not guilty, and of this put himself on God and the country. District Attorney *similiter*, and issue, and thereupon he was remanded to jail. That on the 22d of January, the day following, the court being in session, the prisoner being again brought into court by the sheriff, the clerk was ordered to draw a jury from a box containing the names of jurymen regularly summoned and in attendance, and that the clerk did so call a jury, "the said Dennison Taylor having had his legal and proper challenges," that they came, to wit, &c., &c., "twelve good and lawful men, summoned and returned impannelled and sworn," "who on the 25th day of January 1862, the prisoner being present in court, on their solemn oaths respectively do say that they find the prisoner at the bar, Dennison Taylor, guilty of murder in the second degree, in manner and form as he stands indicted," and thereupon the prisoner was remanded to jail by the court. On the next day, the 26th, the record shows that the prisoner was brought into court, and "having been asked if he had anything to say why sentence should not be passed upon him, and having said he hath nothing to *say other than he hath said*," the court thereupon passed sentence.

This is the usual formal record. The date, if it be material to see when the jury was sworn, is referable to the date when the record shows they were called or balloted for. No contrary presumption overrides the date. The record is express that the prisoner was present, and had his legal and proper challenges before the jury was sworn. No record will give more details than this, for it is the usual and ordinary practice to swear the jury separately, and when the last juror is selected he is sworn, so that when the record shows that the prisoner was present, and had his legal and proper challenges, it necessarily shows that he was present during the entire selection and qualification of the jury.

No record, after the trial commences, ever does more than show the action of the court and jury. It does not set forth who were counsel, in what order the jury were addressed, when the judge charged the jury, whether or not the prisoner was present at that moment, or takes any account of adjournments. All these things are regulated by law and usage, and the presumption in regard to them is, that they have been done according to law, and rightly done.

Since the enactment of the new Penal Code and the Criminal Procedure Act, in which a writ of error lies to bring up the rulings and decisions of the court while conducting a trial for

[Taylor *v.* The Commonwealth.]

homicide, there is evident propriety in the rule laid down by this court in Cathcart *v.* The Commonwealth, 1 Wright 110. There my brother Strong, in delivering the opinion of the court, said: " But in criminal, as well as in civil cases, our inquiries must be confined to the record, and in both classes of cases there is but one rule of construction. In both there is a presumption that the proceedings were regular, and it is incumbent on the plaintiff in error to show by the record that errors were committed before we can interfere. Since the allowance of writs of error to the rulings · of the court, every denial of a right to the prisoner can be made to appear on the record, and when none such appear in the course of the trial, or in points to the court, the presumption that no such error has been made, receives great additional force."

But taking the record as it stands, we have the facts distinctly appearing of the arraignment in court, of the prisoner; of his presence; when the jury were selected and sworn; when the verdict was rendered, and when the sentence was pronounced. No adjournments are noticed in the record, and consequently, in strictness, no legal presumption of absence from the court arises on it. The legal inference would be that no adjournments took place, and that the prisoner was in court all the time. The record shows no adjournments, and how is it to be shown that there were any? If strict law must be the rule in such a case, then this record covers every ground of objection that the prisoner was not shown to be present. This is the legal presumption from the record. But without this, when we find his presence noticed wherever it is usual to be noticed—when we find him answering that he has nothing further to say why sentence should not be pronounced " than he hath said," and not an allegation of any error committed in fact, we think that the fair intendment of the record must be that the prisoner enjoyed all his constitutional rights on the trial.

How it can be alleged as error that the record does not show that the prisoner had not an opportunity to poll the jury, I cannot comprehend. He was present when the verdict was rendered. Now, in the absence of any fact to show that he was restrained, the presumption surely is that he might have polled the jury if he had chosen to do so. If he does not choose to resort to the special form of taking the verdict, the record was quite satisfactory when it showed the verdict taken in the usual form. We think the trial, as exhibited by the record, was entirely according to the substantial forms of law. The history it gives is sufficient, and I cannot well see how the clerk could have otherwise recorded the arraignment, or the drawing or impannelling of the jury, than in the past tense. In Hamilton *v.* The Commonwealth, 4 Harris 133, the doctrine applicable to this objection, as well

[Taylor v. The Commonwealth.]

as to the other exceptions in the case, is stated by Gibson, C. J., thus : " With us, a full record is seldom, perhaps never, formally made up, but the docket which stands in its place must contain the substantial parts of it, from which, together with other records in the office, such a record might be formed. It is because the proceedings remain on paper that we have been able to dispense with strict form as to tense and person, holding fast, however, to matter of substance." This doctrine calls largely on the presumption "*rite acta est,*" and this in accordance with what is obviously proper in view of the fact that every denial of right to a person on trial may be placed on the record for review. It was not always so, and then greater strictness was more needed.

I see nothing in the authorities cited by the counsel for the prisoner which requires a different view of this case than that we have taken, and as we think the record substantially sufficient,

This sentence must be affirmed.