# SAM WOOD v. STATE.

No. A-279.   Opinion Filed December 3, 1910.

1.   APPEAL—Arraignment—Waiver—Presumptions.   (a) Where the record is silent as to whether or not the defendant has been arraigned, but shows that the defendant appeared by counsel and announced ready for trial, participated in the selection of the jury and the examination of the witnesses, and further shows that the issues in the case were properly made up and submitted to the jury, it is too late after conviction for the defendant to object upon the ground that he was not arraigned.

(b)   Where the record is silent as to whether the defendant had been arraigned, but affirmatively shows that the defendant was accorded all the rights and privileges which the statute secures him by arraignment, this court will presume that the defendant was either arraigned or that he waived arraignment.

2.   APPEAL—Briefs—Specification of Error.   Objections to testimony made in the lower court will only be considered by this court where the precise error complained of is clearly pointed out in the brief of counsel, with a statement of the testimony objected to, so as to enable this court to understand the questions presented.   The brief must also contain a statement of the page of the record on which the matter complained of can be found, and it must also clearly state the argument of counsel and contain the authorities relied upon to sustain the objections made in the lower court.

3.   HOMICIDE—Manslaughter—Sufficiency of Evidence.   For evidence held to be sufficient to sustain a conviction for manslaughter in the first degree, see opinion.

4.   APPEAL—Briefs—Specification of Error.   Exceptions reserved to the instructions of the trial court will not be considered by this

court unless the brief clearly points out the alleged defect in said instructions or unless said instructions are fundamentally wrong.

5. APPEAL—Trial—Presence of Accused—Record—Presumptions. Where the record is silent as to the presence of the defendant upon one day of his trial, but shows affirmatively that he was present and announced ready for trial when the trial began, and also that he was present when the verdict of the jury was returned, the entire record may be considered and may be sufficient to justify the presumption that the defendant was present on the day on which the record was silent as to his presence. See facts and conclusions in the opinion justifying this presumption.

6. TRIAL—Remarks of Prosecuting Atty.—Provocation. Where improper remarks made by a prosecuting attorney to a jury have been provoked by and are in reply to remarks made by defendant's counsel, such remarks of the county attorney are not ordinarily ground for new trial.

7. SENTENCE—Curable Defects—Duties of County Attorneys. (a) All judgments and sentences of the court must follow and be based upon the verdict of the jury.

(b) Where there is a variance between the verdict of the jury and the sentence of the court, it must appear from the record that such variance cannot be corrected without depriving the defendant of a substantial right, before the conviction will be set aside, but the cause will be remanded to the lower court for re-sentence.

(c) It is the duty of the county attorneys of the state to prepare all orders and judgments in criminal cases, and when an appeal is taken it is also their duty to carefully read over the case-made and transcript of the record and see that the orders and judgments of the court are correctly copied therein.

(Syllabus by the Court.)

*Appeal from District Court of Pittsburg County; Malcolm E. Rosser, Judge.*

Appellant was indicted for murder and convicted of manslaughter in the first degree, and sentenced to the penitentiary for twenty years, and he appealed. Affirmed with directions to the lower court to re-sentence the appellant.

*Lester & Hammond* and *Arnote & Monk,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE.  First.  Counsel for appellant insist that this conviction should be reversed because the record fails to show that the defendant had been arraigned.

In the early days of the common law, when the defendant had no right to be represented by counsel or to testify in his own behalf, and when the punishment for felonies was extremely severe, if not cruel, great weight was accorded to the forms and modes of criminal procedure, which were looked upon as a bulwark of defense against improper convictions.  An arraignment was a matter of great form and ceremony.  The prisoner was placed in a box or dock and the indictment was read to him by an officer designated for that purpose.  He was required to hold up his right hand to identify himself as the person being arraigned.  The judge before whom a trial took place was regarded as counsel for the defendant.  The indictment was read to the defendant to inform him of the particular offense with which he was charged and to obtain his plea thereto, and thereby enable the court to determine whether it was necessary to have witnesses summoned for the prosecution.  If he pleaded not guilty, the clerk of the court would then demand how he would be tried.  The common answer was, "By God and the country."  The clerk then entered on the record: "The defendant pleads not guilty, and demands to be tried by God and the country."  The clerk then said: "I pray Thee, O God, to send to this defendant a good deliverance."  The defendant was given an opportunity to state to the court what witnesses he desired to have summoned in his defense.  The conditions surrounding an arraignment in olden times have long since passed away, but in many states there is a strong disposition to regard the old forms of the common law as sacred things, when, as a matter of fact, many of them are as lifeless as the mummies of Egypt.  As late as 1806, in the State of Massachusetts, the defendant was required to be arraigned in the presence of three judges, and a capital conviction was reversed because it appeared from the record that, without objection on the part of the defendant, only one judge was present when the defendant was arraigned.

See *Commonwealth v. Hardy,* 2 Mass. 302. We must confess to a want of sympathy with precedents of this character. They have no more application to the law and to conditions existing in Oklahoma than would the provisions of the Code of Hammurabi, the first King of Babylon, said to have been a contemporary of Abraham, which code was discovered in 1901 at Susa in Persia by a party of French excavators. This code is claimed to be the oldest known code of laws. Therefore, if there is to be no progress and development in the law, the code of Hammurabi, by all means, should be cited and followed by courts of modern times.

Our statutes provide for an arraignment, and specifically direct what should be done upon arraignment, and thereby show why an arraignment is required. They provide that if the defendant be without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and he must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court is required to assign counsel to defend him. He must also be asked when he is arraigned if the name by which he is indicted is his true name. He must then declare his true name or be proceeded against in the name of the indictment. If, on arraignment, the defendant requires it, he must be allowed until the next day, or such further time may be allowed him as the court may deem reasonable, to answer the arraignment. In answering the arraignment the defendant may either move the court to set aside the indictment or may demur or plead thereto. See Snyder's Comp. Laws of Okla. 1909, secs. 6731, 6733, 6736, 6737. It is seen from this that the object and purpose of an arraignment is to obtain issues either of fact or of law for trial and to inform the defendant of his right to be represented by counsel, either of his own choice or under appointment from the court; and also to inform him of the precise offense charged against him in order that he may be able to prepare for trial, and to enable the defendant to obtain such time as will be necessary to make such preparation. These are the purposes for which a defendant is arraigned and are the substantial rights which an ar-

raignment is intended to secure to a defendant. The record in this case shows that the defendant was not deprived of any of these rights, but that he exercised each of them. Therefore, under our statute, which requires this court to give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of a defendant, this conviction cannot be set aside because the record fails to show that the defendant was arraigned, when it does show that all of the rights secured by an arraignment were exercised by him. Where there is no injury the law allows no remedy. While the record in this case is silent as to whether or not the defendant was actually arraigned, yet it does appear from the record that upon his trial the defendant was represented by counsel, and that he announced ready for trial and participated in the selection of the jury, and that testimony was offered in his behalf, and the instructions of the court to the jury, which are made a part of the record by our statutes, state that the defendant had pleaded "not guilty." The record also shows that a motion for a new trial and a motion in arrest of judgment were made and no objection was presented upon the ground that the defendant had not been arraigned. When called to the bar of the court to have the sentence of the law pronounced against him, he was asked what he had to say why sentence should not be pronounced, and he interposed no objection whatsoever. He presents the alleged want of arraignment for the first time in this court.

We are of the opinion that when the record shows that a defendant appeared in court, represented by counsel, and voluntarily announced ready for trial and participated in the selection of the jury and offered evidence in his behalf, and that the issues were made up and properly submitted to the jury, it is too late for him after conviction to claim that he was not arraigned. In the light of the record in this case, a reversal of this conviction simply because the record fails to show that the defendant was arraigned would be to juggle with justice and permit the defendant to play with loaded dice. It would prove that this court attaches more

weight to shadow than to substance, to form than to justice. The Ency. of Plead. & Prac., vol. 2, p. 791, par. 3, is as follows:

"By proceeding to trial without objection the defendant precludes himself from taking advantage of a failure of the record to show an arraignment or plea."

The case of *State v. Cassasy*, 12 Kan. 561, is directly in point. Justice Brewer, then a member of the State Supreme Court and afterwards a member of the Supreme Court of the United States, said:

"The record fails to show that defendant was arraigned or pleaded to the information. It shows that he appeared in person and by counsel, and that both parties being ready for trial on the information filed, a jury was called and the case tried. An affidavit appears in the transcript to the effect that as a matter of fact the defendant was not arraigned, and did not plead; but by what right such affidavit appears in the transcript we cannot tell. It was not made a part of the bill of exceptions, nor does it appear to have been used upon any of the motions in the case. Assuming it, however, to be proven that the defendant was not arraigned, and did not enter a formal plea, but being present in person and by counsel, and announcing himself ready for trial upon the information, went to trial before a jury regularly impaneled and sworn, and submitted the question of guilt to their determination, will the omission of the arraignment, or formal plea, avail the defendant thereafter, either on a motion for new trial, or in arrest of judgment? It may be conceded that at common law it would. See the authorities cited by defendant in his brief. But under our statutes we think a different rule must obtain. By para. 161 of the criminal code, (Gen. Stat. 846) it is declared that when a person shall be arraigned, 'it shall not be necessary to ask him how he will be tried; and if he deny the charge in any form, or require a trial, or if he refuse to plead or answer, and in all cases when he does not confess the indictment or information to be true, a plea of not guilty shall be entered, and the same proceedings shall be had in all respects as if he had formally pleaded not guilty.' And by para. 293 it is provided, that 'on an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' It seems to us that under those sections the omission did not and could not affect the substantial rights of the

defendant, and therefore is not ground for disturbing the judgment. (*The State v. Lewis,* 10 Kan. 157)."

In the case of *United States v. Molloy,* 31 Fed. 19, Judge Brewer, then a member of the Supreme Court of the United States, again said:

"In the first place, it is well to consider what the purpose and necessity of an arraignment is. It is laid down in the old law books that three objects are to be subserved: (1) The identification of the defendant; (2) giving him information of the particular offense charged against him for which he is to be tried; and (3) to receive from him the plea which he makes to that charge. Now in the case, as tried, it is perfectly evident that the defendant knew exactly the offense charged against him; that he was identified; and that he denied the charge and went to trial upon that denial. Indeed, he went on the witness stand himself, and there denied it. It may seem something of an anomaly to say that proceedings may be such that in the trial court there is no evidence of prejudicial error when the record transferred to an appellate court may disclose such error. And yet, this matter of arraignment presents very much such a case. Where a record taken to the Supreme Court shows simply an indictment, a trial, and a conviction, there is nothing affirmatively appearing upon the face of the record from which that court can say that the defendant knew, prior to the impaneling of the jury, and prior to the trial, the exact nature of the charge against him. *Non constat* but that he went to trial supposing that the charge was one thing, and, after the testimony was introduced, discovered for the first time that he was being tried for another and different offense. And so, pursuing that thought, that court might say that the record disclosed error, because it failed to show, as one of the guaranties of his protection, that he knew, prior to the time his case was presented to the jury, the exact offense charged against him. But the trial court may have had, as my Brother Thayer had in this trial, the most abundant evidence that the defendant knew exactly the offense which was charged against him, and was prepared to go to trial upon it; and if he did, all that the arraignment subserves was accomplished; and to say that he should be entitled to a new trial for that omission would seem to be, as Chief Justice Henry well says, 'like trifling with justice.'

"But further than that, we have the federal statute, which provides (section 1025) that 'no indictment found and presented

by a grand jury' etc. * * * 'nor shall the trial, judgment, or other proceedings thereon, be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant.' I am aware that, putting a narrow construction on that section, it might be said that it refers only to a defect in the form of the indictment; and yet it is obvious to my mind, from the whole tenor of the federal statutes, that it has, or was intended to have, a broader significance, and to declare that no mere irregularity or defect in the form of the proceedings which did not tend to the prejudice of the defendant should be ground for a new trial."

The Court of Appeals of Texas, in the case of *Plasters v. State,* 1 Tex. App. 685, said:

"If the record shows that a defendant has pleaded not guilty in any case, but fails to show that an arraignment has taken place, a judgment of conviction would not be reversed by this court simply because the record was silent on the subject of an arraignment. We would consider that the arraignment had been waived."

The same court said in *Wilson v. State,* 17 Tex. App. 526:

"If the record, in a capital case, on appeal shows that the defendant pleaded 'not guilty,' but is silent respecting the arraignment of the defendant, this court will presume that an arraignment was waived."

In the case of *Steagald v. State,* 22 Tex. App. 464, the same court said:

"If, in a capital case, the record on appeal shows that the defendant pleaded 'not guilty,' but is silent respecting his arraignment, this court, presuming that an arraignment was waived, will not reverse the judgment of conviction for want of an arraignment."

In the case of *State v. William Grate,* 68 Mo. 27, the Supreme Court of that state said:

"Although there was no formal arraignment of the defendant, yet the record shows that he pleaded not guilty to the indictment, and this answers the objection on that score. *State v. Branunschweig,* 36 Mo. 377; *State v. Saunders,* 53 Mo. 234."

In the case of *State v. Winstrand,* 37 Iowa, 110, the Supreme Court of that state said:

"If the record is silent as to the arraignment, it will be presumed that the defendant was properly arraigned and failed to give his true name, or that he waived the arraignment."

In the case of *Paris v. State,* 37 Ala. 88, the Supreme Court of that state said:.

"When the record in a criminal case shows that the prisoner, being brought to the bar in custody, pleaded not guilty, without raising any objection to the preliminary proceedings, and was thereupon tried and convicted, the appellate court will not reverse the judgment of conviction, because the record does not affirmatively show that he was formally arraigned, and served with a copy of the indictment and a list of the jury."

In the case of *Bassett v. State,* 44 Fla. 12, the Supreme Court of that state said:

"Where there is sufficient in the record to show the presence of the accused in court during the proceedings, the omission of a formal arraignment is waived by pleading to the indictment."

In the case of *State v. Grove,* 61 W. Va. 679, the Supreme Court of that state said:

"An order in a criminal case, reciting the entry of a plea of not guilty, by the prisoner, and then saying 'and the attorney for the state doth the like and issue is joined thereon,' shows that the issue was made up and will sustain a judgment."

In the case of *Preuit v. People,* 5 Neb. 377, the Supreme Court of that state said:

"The statute directing the entry of the prisoner's plea on the back of the indictment is not mandatory, but directory merely, and the failure to so enter it is no ground for a reversal of the judgment, when the plea is contained in another part of the record."

In the case of *Moore v. State,* 51 Ark. 132, the Supreme Court of that state said:

"But it is said the judgment should be reversed because the record fails to disclose that a plea was entered by the defendant. It is not essential that a defendant should enter a plea to the indictment—a plea of not guilty may be entered by the court for him if he declines to plead. And if the court treats the cause as at issue without a formal entry of the plea, and he acquiesces in the court's action by availing himself of every privilege that could

be accorded him under the plea, no substantial right has been affected; but only an irregularity of the most technical character has been countenanced. Where the objection is technical and the thing complained of might have been obviated by the mere mention at the time the irregularity occurred, and it has been productive of no injury, it would be inconsistent with the intelligence that ought to govern the whole course of judicial proceedings to arrest the judgment on account of it. Indeed, we are commanded by the statute which regulates the practice on appeal in misdemeanors, to reverse no judgment except for errors apparent on the record to the prejudice of the appellant. Mansfield's Dig., sec. 2468. No prejudice has resulted from a failure to enter a formal plea in this case. The appellant voluntarily submitted to the trial, and precisely the same proceedings were had as if he had formally entered a plea of not guilty. The cause was treated by both parties as though the issue was made on the plea of not guilty. The formal plea was therefore waived."

In the case of *Spicer v. People,* 11 Ill. App. 294, that court said:

"But if this were the only point in the case we should be inclined to hold up the fact, as shown by this record, that defendant announced himself ready for trial, he in effect entered a plea, and that the failure of the record to contain a formal statement on that point would be a mere irregularity for which, no other reasons appearing, the judgment would not be set aside."

In the case of *Commonwealth v. McKenna,* 125 Mass. 397, the Supreme Court of that state held that, where the record did not show a formal entry of arraignment, but did show that the defendant had pleaded not guilty, the failure of the record to show the arraignment was, at most, an informality that was waived by going to trial without objection.

In the case of *Hack v. State,* 124 N. W. 493, the Supreme Court of Wisconsin, discussing this question at length, said:

"The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished if convicted, by the death penalty, or some other grievous punishment out of all pro-

portion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist, and well that every technical requirement should be insisted on, when the state demanded its meed of blood. Such a course raised up a sort of barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted, but yet under the ordinary principles of waiver, as applied to civil matters, had waived every defect in the proceedings. Thanks to the humane policy of the modern criminal law, we have changed all these conditions.

"The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the state, and may have his witnesses summoned and paid for by the state; not infrequently he is thus furnished counsel more able than the attorney for the state, in short the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principles based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights, and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.

"Surely the defendant should have every one of his constitutional rights and privileges, but should he be permitted to juggle with them? Should he be silent when he ought to ask for some minor right which the court would at once give him, and then when he has had his trial, and the issue has gone against him, should he be heard to say there is error because he was not given his right? Should he be allowed to play his game with loaded dice? Should justice travel with leaden heel because the defendant has secretly stored up some technical error, not affecting the merits, and thus secured a new trial because forsooth he can waive nothing? We think not. We think that sound reason, good sense, and the interests of the public demand that the ancient

strict rule, framed originally for other conditions, be laid aside, at least so far as all prosecutions for offenses less than capital are concerned. We believe it has been laid aside in fact (save for the single exception that trial by a jury of twelve cannot be waived unless authorized by a specific law) by the former decisions of this court. It is believed that this court has uniformly attempted to disregard mere formal errors and technical objections, not affecting any substantial right, and to adhere to the spirit of the law which giveth life rather than to the letter which killeth. It may not always have succeeded; it is intensely human, but since the writer has been here he knows that the attempt has been honestly made."

See, also, the able argument of Judges Peckham, Brewer and White in their dissenting opinion in the case of *Crain v. United States*, 162 U. S. 646, in which they hold that it would be trifling with justice to reverse a conviction in a criminal case because the record was silent as to whether or not the defendant has been arraigned.

As this is the first time that we have been called upon to pass upon this question, and as it is one of great importance, we have thought it best to go into the matter fully, so that it will not be necessary to discuss it or cite authorities in support of our views again.

We believe the world should be ruled by the living and not by the dead, and that it is our duty in construing the laws of Oklahoma to give them a common-sense construction, so as to secure justice and thereby accomplish the purpose for which they were enacted. We think the forms of the common law are only to be followed when they are based upon reason and justice, and applicable to the conditions existing in this state; thus far will we follow them, and no further. In fact we are required to take this position by the express terms of our statute. Section 6487 of Snyder's Comp. Laws of Oklahoma. in chapter 89, under title of Criminal Procedure, is as follows:

"The rule of common law that penal statutes are to be strictly construed, has no application to this chapter. This chapter establishes the law of this state respecting the subjects to which

it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

Section 6975 of Snyder's Comp. Laws of Okla. 1909 is as follows:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The record in this case shows that every object to be accomplished by an arraignment, and every right which an arraignment gives to an accused, was secured to the defendant in this case. When the record shows that this has been done, it is utterly immaterial as to whether or not the defendant was arraigned.

Second. Defendant's brief contains a number of pages in which the testimony of witnesses is copied, and from which it appears that the defendant objected to the introduction of such evidence and saved exceptions to the ruling of the court admitting the case. But the brief fails to make any argument or cite any authorities in support of the general objection made during the trial that the evidence was irrelevant, incompetent and immaterial. While, by statute, this general objection is sufficient during the trial in the absence of a request from the trial court that the objections should be made more specific, yet when it comes to this court such objections are altogether insufficient. In fact, to simply copy the evidence introduced in the lower court and the objections thereto is not briefing the case. Upon appeal the brief must state the precise error complained of and enough of the record to enable this court to understand the questions presented, and also state the page of the record upon which the matter complained of can be found. And it must also state clearly the argument and the authorities relied upon by the attorneys to sustain the objections made in the lower court. See *Cox v. State*, 3 Okla. Cr. 129. As the objections to the evidence in this case have never been briefed, they are not properly before us and will be treated as waived. We will state, however, that we have read the entire evidence in the case and fail to see where the trial court committed

any error either in the reception or rejection of testimony. Where objections to evidence are not properly presented in the brief, they will only be considered by this court when such evidence would not have been admissible for any purpose whatever and where it clearly appears to the court that its reception was injurious to the defendant.

Third. The defendant complains that the evidence is not sufficient to sustain the verdict. The rule in such cases is that when there is evidence in the record from which the jury could legitimately arrive at the conclusion of the defendant's guilt, the verdict will not be disturbed upon the ground that it is not sustained by the evidence, unless the record shows that the jury was influenced by improper considerations in convicting the defendant. There is abundant testimony in the record which if believed by the jury, would have required them to acquit the defendant. On the other hand, the state proved by a number of witnesses that, on the night before the killing, the defendant, speaking of the deceased, called him a scab son-of-a-bitch, and said that he, the defendant, was not going to work any more until he killed the deceased, and further said that Pete Mullens (who was jointly charged with the defendant for killing the deceased) was on the trail of the deceased at that time. It was also proven that the defendant and his co-defendant, Pete Mullens, had had previous trouble with the deceased, and that just after he was shot deceased had stated: "They have killed me; Pete Mullens shot me." A few minutes after the shooting the defendant was arrested by the constable of the precinct in which the killing occurred, and he had in his possession a rifle, which, upon examination, proved to have been recently discharged. It was proven that deceased was wounded by two bullets of different caliber. The record is quite lengthy, but contains many circumstances which tend to prove that Pete Mullens and Sam Wood were acting together, and that one or the other of them had killed the deceased. The evidence for the defense was to the effect that the fatal shot was fired by Pete Mullens, and that, while the defendant was present, he did not take

4 Cr.—29

any part in the difficulty which resulted in the death of Barnes. The jury had the issues in the case fairly and clearly submitted to them by the instructions of the court. They heard the testimony of the witnesses and saw their demeanor while upon the witness stand, and were in a far better condition to determine as to who should be believed than are the members of this court. This case was tried before a judge of exceptional ability, impartiality, fairness and courage. He saw and heard the witnesses, and he approved the verdict of guilty. This court can only inspect the cold record, while the judge and jury who tried the case saw and heard the living witnesses. In the absence of anything in the record indicating bias or prejudice upon the part of the judge or jury who tried the case, or that they were influenced by improper considerations, we cannot disturb the verdict upon the ground that it is not supported by the testimony.

Fourth. The jury were fully instructed by the trial court upon all the issues presented by the evidence. Counsel for the defendant excepted to instructions Nos. 7, 18 and 21, but they have not in their brief attempted to point out any defect in said instructions, and from an examination of the instructions excepted to we can not see in what respect they are defective.

Fifth. Counsel for the defendant contend that this conviction should be reversed because the record of the second day's trial fails to show that the defendant was present. Section 6775, Snyder's Comp. Laws of Okla. 1909, is as follows:

"If the indictment is for a felony, the defendant must be personally present at the trial, but if for a misdemeanor not punishable by imprisonment, the trial may be had in the absence of the defendant; if, however, his presence is necessary for the purpose of identification, the court may, upon application of the county attorney, by an order or warrant, require the personal attendance of the defendant at the trial."

The record entries with reference to the trial are as follows:

"Public proclamation of the opening of court having been announced, proceedings were had, among others, as follows, to-wit:

"State of Oklahoma v. Pete Mullens, Tom McElwain, Sam Wood, J. A. McQueen. No. 548. (Murder).

"Now on this day come the defendants herein, and request severance in this cause, which severance is by the court granted, whereupon the state elects to try the defendant Sam Wood first, and thereupon the defendant Sam Wood is put on trial.

"State of Oklahoma v. Sam Woods. No. 548. (Murder).

"Now on this day this cause comes on for trial, the state being represented by T. R. Dean, county attorney, and the defenddant being present in his own proper person in charge of the sheriff, and represented by his counsel, Lester and Hammond and Arnote and Monk, and both the state and defendant announce ready, whereupon comes a jury for the trial of this case as follows, to-wit: A. Wheeler, T. L. Shaw, Wiley Adams, A. B. Ringland, A. Hower, T. H. Kenneaster, Rube Chapman, William Farris, H. Beene. Chas. Burkhardt, Zack Boone and Ike Yoes, twelve good and lawful men, duly selected, empaneled and sworn for the trial of this cause, and are accepted by both the state and defendant, and now the state makes statement, and the jury, after hearing part of the evidence, the hour of adjournment having arrived, were given in charge of L. J. Hefley, court bailiff, to be turned into open court tomorrow morning at 8:30, March 31st, 1909.

"Ninth Judicial Day, March, 1909, Term. Date, 3-31-09.

"State of Oklahoma v. Sam Wood. No. 548. (Murder.)

"Now on this day comes the jury, heretofore empaneled and sworn for the trial of this cause and take their seats in the jury box and the trial of this case is resumed, and the jury, after hearing balance of evidence, charge of the court and part of argument of counsel, the hour of adjournment having arrived, the jury was given in charge of L. J. Hefley, court bailiff, until tomorrow morning at 8:30 o'clock a. m., April 1st, 1909.

"Tenth Judicial Day, March, 1909, Term. Date 4-1-09.

"And now court convened on Thursday, April 1st, 1909, pursuant to adjournment. Present the Honorable Malcolm E. Rosser, Judge; W. B. Riley, clerk; T. R. Dean, county attorney; John A. Harrison, sheriff, by L. J. Hefley, bailiff, and Henry S. Cabell, stenographer.

"Public proclamation of the opening of court having been announced, proceedings were had, among others, as follows, to-wit:

"State of Oklahoma v. Sam Wood.    No. 548.    (Murder.)

"Now on this day the trial of this cause is resumed, the state being present by T. R. Dean, county attorney, and the defendant being present in his own proper person in charge of the sheriff, and represented by his counsel, Lester & Hammond and Arnote & Monk, whereupon comes the jury heretofore empaneled and sworn for the trial of this cause and take their seats in the jury box, and the trial of this case is resumed, and after hearing balance of argument of counsel the jury retires in charge of a sworn bailiff to consider of their verdict, and thereupon returned into open court, with the following verdict, towit:

" 'We the jury, duly empaneled and sworn in the above styled cause do find upon our oaths the defendant Sam Wood GUILTY of Manslaughter in the FIRST Degree as charged in the Information in this case, and assess his punishment at Imprisonment for the period of Twenty (20) Years.

" 'IKE YOES,
" 'Foreman.'

"Whereupon the jury was discharged from further consideration of this case, and the defendant Sam Wood remanded to the custody of the sheriff to await sentence."

It affirmatively appears from the record that the defendant was in charge of the sheriff during the entire trial; that he was present when the trial began and announced ready for trial, and through his counsel participated in the selection of the jury and the examination of the witnesses. It is true that the record of the second day's trial does not directly assert the presence of the judge who presided at the trial, or of the defendant, but enough is stated to make it judicially appear that the judge and the defendant were present. The record entry is that "The trial of this case is resumed." This court will take judicial notice of the fact that the trial could not have been lawfully resumed in the absence of the judge who presided and of the defendant. In the case-made it appears that the defendant testified as a witness in his own behalf. The entry of the second day's trial, after stating that the trial of the case was resumed, proceeds: "And the jury, after hearing the balance of the evidence, charge of the court and argument of counsel, the hour of adjournment having arrived,

the jury were given in charge of L. J. Hefley until tomorrow morning at 8:30 o'clock a. m." This strengthens the presumption that the defendant was not only present on the second day of the trial, but also that he testified as a witness in his own behalf during said second day, for he was among the last witnesses who testified on that day. The record of the third day's trial affirmatively shows the defendant's presence.

The defendant filed a motion for a new trial, but this motion does not complain that the defendant was absent at any time during said trial. If, as a matter of fact, the defendant had been absent at any time during the trial, it was the duty of his counsel to have presented this matter to the judge, who would doubtless have granted him a new trial, or would at least have made such absence a matter of record. After the defendant's motion for a new trial was overruled, and before sentence was pronounced upon him, he was asked what, if anything, he had to say why he should not be sentenced according to the verdict of the jury. The defendant remained silent. There is no showing in the case-made or in the record that the defendant was absent at any time during the trial. This question is presented for the first time by brief of counsel for the defendant in this court, and this claim is based alone upon the recitals contained in the transcript of the record of the second day of the trial. Under these conditions it is our duty to construe the recitals contained in the transcript of the record most strongly against the defendant, and from these recitals, as hereinbefore stated, and from the further fact that this motion was not presented in the trial court when the record could have been corrected if erroneous, this court is authorized to presume that the defendant was present during his entire trial. No presumption can be indulged in against the express declaration of the record, but where one part of the record is silent as to a given matter, the other parts of the record may be considered, and may be sufficient to justify the presumption that that which should have been done was done. We feel that it would be trifling with justice to grant this defendant a new trial upon this question

in the face of the record. We are sustained in these views by the following authorities:

"The only remaining assignment of error is that it does not appear on the record, that the prisoner was present in the court after the first day of the trial, until its close (the trial having been continued from day to day for several days). The record shows his presence on the first day, and when the jury were impaneled and sworn; and at its close when the judgment was rendered; and that at the latter period, being asked whether he had anything to say why judgment should not be pronounced against him, he alleged no reason to the contrary. During all the intermediate days of the trial, the record merely shows the entry of continuances in the usual form, without referring to the presence or absence of the prisoner. We concur entirely with the New York Court of Appeals in *Stephens v. The People* (19 N. Y. 549) that this condition of the record is no ground of error; that the allegation of continuances indicates that it was with the incidents above described, of which the presence of the prisoner was one, and this is all which is usually stated in such cases. But it is quite apparent that there is no ground for suspecting the prisoner's absence during any part of the trial in this case. A motion was made for a new trial upon four distinct grounds, of which the absence of the prisoner is not mentioned as one—an omission not likely to have occurred had he been absent during any part of the trial." (*Grimm v. People*, 14 Mich. 300.)

"It is said the court below erred in pronouncing sentence upon the defendant during his absence. No such question was made in the court below, and there is nothing in the record to indicate his absence, except the mere failure of the entry to affirmatively show that he was present. This is not sufficient to support the conclusion. This court will presume that the circuit judge did his duty in such matter, in the absence of an affirmative showing to the contrary." (*Griffin v. People*, 109 Tenn. 34.)

"According to the rule governing appellate procedure, the duly authenticated record and minutes of the trial cannot be contradicted in this court, and every material recital in a judgment of conviction imports absolute verity. *Wright v. Sherman*, 3 S. D. 367, 53 N. W. 425; 2 Cyc. 859; *Morgan v. State*, 51 Neb. 672, 71 N. W. 788; *Gray v. State*, 63 Ala. 66; *Taylor v. Commonwealth*, 44 Pa. 131; *People v. Rozelle* (Cal.) 20 Pac. 36; *Reynolds v. State* (Fla.) 16 South. 78; *Anderson v. Commonwealth*, 100 Va.

860, 42 S. E. 865. The record affirmatively shows that the accused, when called upon to answer the information, was present in court, and personally entered a plea of not guilty; that the cause was brought on regularly for trial and the issue thus raised, and he was sworn and testified on his own behalf; that the jury, after hearing all the evidence, and in the presence of the accused, returned into court and delivered its verdict. The presumption that the defendant was personally present at all times required by statute is therefore entertainable. In *Folden v. State,* 13 Neb. 328, 14 N. W. 412, Justice Lake, in speaking for the court, uses the following language: 'Where the record once shows the presence of the prisoner at his trial, it will be presumed to have continued to the end, unless the contrary is affirmatively shown.' " (*State v. Pearse,* 19 S. D. 78.)

"The question here, however, is not whether the prisoner was entitled to be so present, but whether it sufficiently appears on the record that he was present. The record does not set forth, with that fullness it might have done and such as is usual, what did occur on the trial. But 'it is sufficient, if it be certain, to a certain intent, in general; it is not necessary that it should be certain, to a certain extent in every particular, so as absolutely to exclude every possible conclusion, all arguments, presumption or inference against it.' This is the language of the court in *Christmas' Case,* 4 Dev. & Bat., 413. The record in this case shows, in language sufficiently intelligible, that the prisoner was present at the conclusion of the trial. It states the names of the jurors who were sworn and charged to try the case; it then proceeds, who find: 'John Collins, the prisoner at the bar, guilty,' etc. It is answered on the part of the prisoner that this does not ascertain with sufficient certainty his presence during the trial. Under the rule laid down in the case of Christmas we think it does; and that we are bound, from it, to believe that he was present during the trial. Croton's case is an authority on this point. The language of the court in that case is: 'But although it is the more correct that the presence of the accused should be expressly affirmed, yet, we conceive, it is sufficient if it appear by a necessary or reasonable implication.' 6 Ire. 169. In this case the accused is called by the jury, in their verdict, the prisoner at the bar, and the clerk, in recording it, calls him the prisoner at the bar. It would be too violent a supposition, that he had been brought to the bar simply to hear the verdict pronounced, when his right

to be present the whole time is secured to him by the fundamental law of the country; and when such is the uniform practice, if not a necessary, it is a reasonable implication that such was the fact, and we so understand it. It has, however, been argued before us that the expression, the prisoner at the bar, is satisfied by his being in the custody of the sheriff. The prisoner, it is' true, is in the custody of the sheriff after his arrest, until duly discharged, unless he escape, but the term of the prisoner 'at the bar,' is used to designate where he is in his custody, towit, at the bar, in the presence of the court and jury." (*State v. Collins*, 30 N. C. 414.)

"It is also urged, in the prisoner's behalf, that it does not appear that he was present during the trial. The return states that he appeared in his own proper person, and was in due form of law tried and convicted. As it is nowhere stated that he left the court after he so appeared, the presumption is that he did remain and was present during the whole of the trial; certainly, no presumption to the contrary can be entertained, as long as nothing appears to support such an inference." (*Hildebrand v. People*, 8 N. Y. 21.)

"It is urged that it does not affirmatively appear, from the record of the judgment, that the defendant was in court at the time the jury returned their verdict and it was received by the court. The record is substantially like that involved in *Schirmer v. The People*, 33 Ill. 276. There the arraignment and trial were upon one day, and upon the following day the jury returned their verdict and the judgment was rendered. It was there said: 'That he (defendant) was personally present was shown by his arraignment, for that involves his personal appearance. No interval appears between the arraignment, trial, verdict and judgment, and the presumption, therefore, must be, the prisoner remained in court the whole time. The whole proceedings seem to have been very expeditious, and in the consecutive and continuous order in which they are stated in the record they necessarily imply his personal presence during the whole time, including the moment when sentence was passed by the court. * * * The fact of the prisoner's presence can, by fair intendment, be collected from the record, and that is sufficient.' Besides this, it is affirmatively stated in the bill of exceptions, and thereby made a part of the record, that 'thereupon the jury rendered the following verdict against the defendant, he being then present in open court.' Our conclusion is, that there is no just ground for claiming that the

record does not show that the defendant was in court when the verdict was returned and received." (*Padfield v. People,* 146 Ill. 664.)

"The trial commenced on the sixth day of October, the evidence and arguments of counsel were completed and the jury were instructed and retired on the seventh, and returned their verdict into court and were discharged on the eighth. It is assigned as error that the record fails to show affirmatively that the defendants were present in court during the progress of the trial on the seventh day of October, or at the time when the jury returned their verdict into court, on the eighth. It is a well settled rule of the common law that a prisoner accused of a felony must be present in person throughout the trial, and that the record should show such fact. (*Harris v. People,* 130 Ill. 457.) If the presence of the prisoner in court can by fair intendment be collected from the entire record, that is sufficient. (*Schirmer v. People,* 33 Ill. 276; *Padfield v. People,* 146 *id.* 660; *Bolen v. People,* 184 *id.* 338.) The right to be present, however, may be waived by the defendant. (*Sahlinger v. People,* 102 Ill. 241.) The record shows that the defendants were all personally present at the time the trial commenced, on the sixth; that during the trial each of the defendants testified as a witness for the defense; that there was no interval between the commencment of the trial and the verdict; that the whole proceedings were completed within three days and were carried on in a consecutive and continuous order, and that a motion for a new trial was made upon the receipt of the verdict upon five distinct grounds, of which the absence of the defendants is not mentioned as one. In the case of *Schirmer v. People, supra,* which was an indictment for murder, the record showed no interval between the arraignment of the prisoner, the trial, verdict and judgment. The whole proceeding appeared to have been completed within two successive days and in continuous order. It was held, upon such record, that the presence of the defendant during the whole proceeding, down to the moment sentence was passed upon him, was a matter which might fairly be implied. This case was approved and reaffirmed in *Padfield v. People, supra.* The doctrine seems to be well settled that where the record shows that the accused was present at the commencement of the trial, the whole proceeding appearing to have taken place in consecutive and continuous order and nothing to the contrary appearing therefrom, it will be presumed that he was present at every subsequent stage of the proceeding down to

the return and receipt of the verdict. *Dodge v. People,* 4 Neb. 220; *Stephens v. People,* 19 N. Y. 549; *Rhodes v. State,* 23 Ind. 24; *Brown v. State,* 13 Ark. 96; *Smith v. State,* 60 Ga. 430; *Harrimon v. State,* 2 Green, (Iowa) 270; *Holmes v. Commonwealth,* 25 Pa. St. 221; *Grim v. People,* 14 Mich. 300; *State v. Craton,* 6 Ired. 164." (*Sewell et al. v. People,* 189 Ill. 174.)

"As recited in the transcript, the case was originally set for trial Monday, September 2, 1901. The defendant had previously been properly arraigned and pleaded not guilty. The record is silent in reference to the presence or absence of the defendant or his counsel at the time it was so set. The presumption is in favor of the regularity of the proceedings in the trial court and that they were present. The 2d of September being a holiday, however, the court had the case set for trial for the 3d of September, at which time, it is recited in the transcript, the defendant was in jail and not in court." (*People v. Rader,* 136 Cal. 253.)

"It is further assigned, as error, that the record does not show that the defendant was present at the trial, or at the rendition of the verdict. Such presence is required by the Revision, sections 4706 and 4826. The record does show that, on the 4th day of April, 1864, the cause coming on for hearing, the defendant was called, and failing to appear, a default was entered against him and his sureties on his bail bond. That, on the 5th day of April, the defendant appearing in open court, the default was set aside and a jury trial had, and verdict rendered on the 6th; that, on the 7th, a motion for a new trial was made and overruled, and on the 9th, 'the defendant being in open court, was called within the bar' and sentenced. Being thus shown to be present at the commencement and conclusion of his trial, this court will presume the defendant present all the time, unless the contrary is shown. *Harriman v. The State,* 2 G. Greene, 270. In other words, the error, if any was committed, must be shown affirmatively by the party complaining of it." (*State v. Wood,* 17 Iowa, 18.)

"So far as shown by the record, neither of the plaintiffs in error was absent when the instruction was given. It does appear that they were present on that date, and the presumption is, in the absence of anything to the contrary, that they were present at every stage of the proceeding. (*Schirmer v. People,* 33 Ill. 276.) Plaintiffs in error attempt to show the contrary by affidavits filed in support of their motion for a new trial, but such affidavits cannot be taken as evidence of what occurred at that par-

ticular time. (*Dreyer v. People,* 188 Ill. 40; *Mayes v. People,* 106 *Id.* 306; *Scott v. People,* 141 *Id.* 195; *Peyton v. Village of Morgan Park,* 172 *Id.* 102.) If plaintiffs in error were absent from the room, as alleged in these affidavits, they cannot take advantage of such absence, for the reason that they voluntarily absented themselves. *Sahlinger v. People,* 102 Ill. 241." (*Gallagher v. People,* 211 Ill. 158.)

"Notwithstanding it is established by the pleadings in this proceeding that the appellant was in fact present during the trial which resulted in his conviction, it is contended that the judgment under which he is imprisoned is a nullity because the record of conviction does not disclose his presence 'at any time during which the trial proceeded.' Assuming that the presence or absence of the accused during the trial of a felony can be ascertained alone from the record of the court wherein he was convicted, and that an inquiry touching the question is proper in a *habeas corpus* proceeding, we will proceed to determine what this record of conviction discloses, and what the law requires regarding personal presence in criminal cases. It appears on the face of the record that the indictment was returned on June 4, 1901; that the appellant was personally present and arraigned on the same day; that he was personally present and entered the plea of not guilty on June 5th; that the jury was selected and sworn on June 6th; that on the same day certain witnesses were sworn and examined on behalf of the state, and certain others, among whom was Frank Kotilinic, on behalf of the defendant; that on June 8th the court charged the jury; that on the same day the verdict was returned, and judgment pronounced in the personal presence of the appellant. Thus it appears affirmatively that the proceedings from the return of the indictment to the rendition of judgment took place on four days; that the appellant was personally present for arraignment, to plead, to receive the verdict, and to receive sentence; and that he was personally present on three of the four days in which any action appears to have been taken in his case. If the indictment is for a felony, the statute requires the defendant to be personally present at the trial. Rev. Code. Cr. Prov. § 301. The trial begins when the jury has been impaneled and sworn. It ends when the judge has concluded his charge. *Id.* § 350. Where a felony is charged, the defendant is also required to be personally present at the time of arraignment, when the verdict is received, and when judgment is pronounced. *Id.* §§ 244, 398, 437, 444. His personal presence is not necessary

at times other than those prescribed by the statute. *Territory v. Gay*, 2 Dak. 125, 2 N. W. 477. Can we conclude that appellant was personally present at the trial. Concerning the determination of this question the authorities are conflicting. In California it was held that, unless the contrary appears from the record, it will be presumed that the accused was present at a time required by the statute. *People v. Sing Lum*, 61 Cal. 538. On the other hand, it was held in Wisconsin that no presumption will be indulged to supply the record in a criminal case, where it does not show the necessary fact of the defendant's presence. *French v. State*, 55 N. W. 566, 21 L. R. A. 402, 39 Am. St. Rep. 834. Between these two extremes are numerous decisions to the effect that it is sufficient if the fact of the defendant's presence can, by fair intendment, be collected from the entire record. *Schirmer v. People*, 33 Ill. 276; *Stephens v. People*, 19 N. Y. 550; *Brown v. State* (Fla.) 10 South. 736; *Folden v. State*, 13 Neb. 328, 14 N. W. 412; *Jeffries v. Commonwealth*, 12 Allen, 145; *State v. Cartwright*, 10 Or. 193; *Territory v. Yarberry*, 2 N. M. 391. In *Brown v. State, supra*, this language is used: 'In felonies it is necessary that the accused be personally present during the progress of the trial, including the judgment or sentence of the court imposing the penalty of the law. But, while it is best always to have the record show directly and affirmatively that the accused was personally present at each and every stage of the trial, yet it will be sufficient if it appear therefrom by necessary and reasonable implication that he was present.' In *Jeffries v. Commonwealth, supra*, the rule is thus stated: 'Nor is it necessary that the record should in direct terms state that the party was personally present at the time of the rendition of the verdict, and during all the previous proceedings of the trial. However necessary it may be that such should have been the fact, it is not necessary to recite it in the record. The record shows that he was present at the arraignment, and present to receive his sentence.' Mr. Chief Justice Lake, speaking for the court in *Folden v. State, supra*, says: 'And, lastly, it is urged that the record fails to show affirmatively that the prisoner was present in court when the jury brought in their verdict. This point was not made in the motion for a new trial, and therefore, even if it could otherwise be regarded as fatal to the judgment, it is too late to raise it now. *Dodge v. The People*, 4 Neb. 220. The record, however, does show that the prisoner was duly arraigned, and pleaded to the indictment; that he was present at

the impaneling of the jury who tried him, and gave his own testimony as a witness before them. With these facts, it would be altogether unreasonable to presume from the mere silence of the record on that point that he was absent when the verdict was received by the court. Where the record once shows the presence of the prisoner at his trial, it will be presumed to have continued to the end, unless the contrary is affirmatively shown. The presumption is, rather, that the trial court did its duty than that it did not.' Supported by the foregoing authorities, and others that might be cited, we have no hesitancy in concluding, from the facts appearing on the face of the record, that the appellant was personally present during the trial which resulted in his conviction." (*State v. Swenson*, 18 S. Dak. 196.)

"It is claimed that the record does not show that the prisoner was present in court during the trial, nor at the time sentence was pronounced. It appears from the record, that the prisoner was duly arraigned and plead not guilty, that he was present during the time the jury were being impaneled, that after the evidence was closed he filed instructions with the clerk and excepted to the instructions given by the court on its own motion, but the record is silent as to whether the prisoner was present in court or not, at the time the jury returned their verdict. The rule is well established that in all cases of felony the prisoner must be present in court during the trial, and at the time the verdict is received, and no valid judgment can be predicated on a verdict received in the absence of the prisoner. At common law, the finding of the jury of the guilt of the accused, was conclusive of that fact, and the court possessed no power to set the verdict aside and grant a new trial on the merits, on the motion of the accused, even where the verdict was clearly against the weight of the evidence. Hilliard on New Trials, 114. *Queen v. Bertrand*, 1 P. C. 520. *The King v. Fowler*, 4 Bar. & Ald., 275, 1 Ch., C. L., 653. Neither was counsel allowed a prisoner upon his trial on the general issue, in any capital crime, unless some point of law arose proper to be discussed. 4 Blackstone Com., 355. To guard against this provision of the common law, the Constitution of the United States provides, that in all criminal prosecutions the accused shall have the assistance of counsel for his defense. Nor must it be forgotten, that among the variety of actions that men are liable to commit, one hundred and sixty were declared to be felonies without benefit to clergy, the punishment of which was death. 4 Blackstone, 19. Therefore the utmost

caution was required in capital trials, in favor of life, and if an irregularity materially affecting the trial occurred to the injury of the accused, the court usually represented such matter to the crown and a pardon was granted. *Commonwealth v. Green,* 17 Mass., 534. Now, however, in the court of Queen's Bench, when the record is before that court and it appears that evidence has been improperly admitted, or the jury have been misdirected, a new trial may be granted in cases of felony. *Rex v. Scaife,* 2 Den. C. C., 281, 17 Q. B., 238; and a person accused of crime is allowed the assistance of counsel to conduct his defense. In this country the almost uniform practice has been to extend to criminal cases, so far as the revision of verdict is concerned, substantially the same principles which have been established in civil cases; and by statute in this state, after a verdict of guilty, a defendant may move for a new trial, on any or all of the grounds therein set forth. And it is his duty, in such a case, to bring before the court, by his motion, all the reasons which are known to exist for setting aside the verdict and granting a new trial. There is no reason why the same rule in that respect should not apply in criminal as in civil cases. In this case, in the twenty-three grounds assigned in the motion for a new trial, there is no allegation that the prisoner was not present in •court; the only irregularity complained of in the proceedings of the court is in overruling the motion of the prisoner to quash the indictment. The presumption is that the court performed its duty and that the prisoner was in court at the time the verdict of the jury was received. In the case of *Beale v. The Commonwealth,* 25 Penn. State, 18, the court held 'we are not to expect too much from the records of judicial proceedings. They are memorials of the judgments and decrees of the judges, and contain a general but not a particular detail of all that occurs before them. If we must insist on finding every fact fully recorded before a citizen can be punished for an offense against the laws, we should destroy public justice, and give unbridled license to crime. Much must be left to intendment and presumption, for it is often less difficult to do things correctly than to describe them correctly.' And in *Rhodes v. The State,* 33 Ind. 24, the court held: 'In this case the prisoner is shown by the record to have been present in court at the commencement of the trial. The record is silent as to where he was at the return of the verdict. We presume he was in court.' See, also, *Brown v. The State,* 13 Ark. 100." (*Dodge v. People,* 4 Neb. 220.)

"A motion is also submitted in arrest of judgment. The reason assigned is insufficient. From the record it appears that the prisoner was at the bar during the selection of the jury; for it shows at the commencement of the trial, that the prisoner being brought to the bar in the 'custody of the sheriff' &c.; after this is the drawing of the jury; and the jury in their verdict say that they find the prisoner at the bar, &c., and after it is this entry: 'The prisoner is thereupon remanded to jail.' It thus manifestly appears that the prisoner was present at the bar when the jury was drawn, and during the whole time of the trial. The entry, after he was brought into court—'it is therefore ordered that he be again committed to his custody'—that is, the custody of the sheriff, cannot alter the record as to his actual presence. Such an order was right and proper, to make the sheriff responsible for his person, so as to prevent an escape, and supersede the necessity for a fresh order to that effect every time the court should take a recess, which often occurs on the trial of a capital case. It is true the prisoner was in the custody of the law, and the court had a right to so order as that he should be forthcoming to hear his verdict and the judgment." (*State v. Langford*, 44 N. C. 436.)

*Humphrey v. State*, 3 Okla. Cr. 504, is not in conflict with the conclusion here reached. In that case there was nothing in the record to show the presence of the defendant during part of the trial, and also when the verdict was returned into court against him. In this case the record affirmatively shows the presence of the defendant when the trial began, and when the verdict was returned against him, and also inferentially shows his presence during the second day of the trial.

As this is a new question in Oklahoma we have copied the above authorities for the purpose of showing that our views are sustained by authority as well as by justice and reason.

Sixth. In his closing argument to the jury the county attorney used the following language: "The reason I asked Pete Mullens if Ed Thompson hadn't had to hold him to keep him from shooting Wash Barnes on one occasion in Savanna, was because I had been informed that he had said that by what I regard as reliable parties." The defendant objected to the remarks of the county attorney and moved the court to exclude them from the

jury. This motion was overruled by the court, to which the defendant excepted. The case-made shows that these remarks of the county attorney were made in reply to remarks made by one of the counsel for the defendant. Counsel for the defendant, in the course of his argument, had stated that the county attorney had tried to get matters before the jury he could not prove, and had insinuated the existence of certain facts of which there was no evidence, and gave as an instance the question asked Mullens by the county attorney, and then challenged the county attorney to say why he did not put Thompson on the stand. It was in reply to this challenge that the statement objected to was made, and the county attorney further stated at the time that the reason why he had not put Thompson on the stand to testify was because he had found out that Thompson's evidence would not sustain the information which he had received. It is thus seen that the statement made by the county attorney was in reply to an accusation of unfairness which had been brought against him by counsel for the defendant, and also explained why he had not placed Thompson on the stand. The defendant's counsel having provoked this controversy and having challenged the county attorney to make the explanation to the jury, the defendant is in no condition to complain at the remarks made by the county attorney. The trial court therefore did not err in refusing to withdraw the remarks of the county attorney from the jury. Where remarks of a prosecuting attorney have been provoked and are in reply to defendant's counsel, such remarks are not ordinarily ground for a new trial. See *Buck v. Terr.,* 1 Okla. Cr. 517.

Seventh. The jury found the defendant guilty of manslaughter in the first degree and assessed his punishment at imprisonment in the penitentiary for a period of twenty years, but the judgment of the court recited that the defendant had been convicted for the crime of murder, and the court sentenced the defendant to 20 years' imprisonment in the state penitentiary for said offense of murder. Counsel for the defendant insist that a new trial should be granted the defendant on account of the var-

iance between the verdict and sentence of the court. It goes without the saying that the verdict is the basis of the judgment. Therefore the judgment and sentence must follow the verdict. Here we have a defendant convicted for one offense and sentenced for another. Upon the face of the sentence it appears that error was committed, because under our statutes it would be impossible to sentence a defendant to twenty' years imprisonment in the penitentiary for the crime of murder The punishment for' the crime of murder is either death or imprisonment in the penitentiary for life. So, upon its face, without reference to the verdict, the judgment and sentence in this case is erroneous. We do not feel, however, that we should grant the defendant a new trial on this account. The supreme purpose of this court is to decide every case on its actual merits and according to the truth and justice of the questions involved. We can not reverse a case on account of any technical error or defect which did not deprive the defendant of some substantial right. We find that up to and including the rendition of the verdict in this case the defendant was not deprived of any such right. He was tried by a fair and impartial jury. The evidence amply sustains the verdict. The variance between the judgment and the verdict was in all probability the result of a clerical error. We do not believe a new trial should be granted in such a case, because the error can be corrected without injury to the rights of the defendant.

In this connection we desire to say to the county attorneys of the state that it is their duty to prepare all orders and judgments in criminal cases. A failure to do this on the part of some of the county attorneys of the state has given this court a great deal of trouble, and has greatly hindered us in the determination of cases. It is also the duty of county attorneys when an appeal is taken to carefully read over the case-made and transcript of the record and see that the orders and judgments of the court are correctly copied therein. It is a matter of constant repetition in this court to have motions filed to correct defective records. This

4 Cr.—30

all comes from the heedlessness, carelessness or incompetence of some of the county attorneys of the state. It not only results in great delay in the administration of justice, but it also adds materially to the expenses incurred in the business of the court, and frequently forces this court to reverse convictions which would have been affirmed had it not been for neglect on the part of the county attorneys as hereinbefore pointed out. We suggest to the trial judges of the state that, except in instances where they have clerks of experience and approved ability, they require the county attorneys to attend to these duties. We trust we will not have occasion to call attention to this matter again.

It is ordered by the court that all of the proceedings had in the trial court in this case up to and including the verdict of the jury are approved and affirmed, and that the judgment and sentence of the trial court be set aside upon the ground of the variance between the verdict of the jury and that this cause be remanded to the district court of Pittsburg county, with directions to the judge of said court to re-sentence the defendant in conformity to the verdict of the jury. When the defendant has been re-sentenced in accordance with the verdict of the jury, the sheriff of Pittsburg county will forthwith deliver the defendant to the warden of the penitentiary at McAlester, in order that the sentence of the court may be executed without further delay.

DOYLE and RICHARDSON, JUDGES, concur.