MARSHALL UPCHURCH v. STATE.

No. A-7099. Opinion Filed Sept. 13, 1930.
Rehearing Denied Nov. 8, 1930.
(292 Pac. 379.)

82

L. M. Gensman and John F. Thomas, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted of the crime of willfully, unlawfully, and feloniously having sexual intercourse with Ella Lemons, said Ella Lemons being under the age of 16 years, and not the wife of the defendant; was sentenced by the court to serve a term of seven years in the state penitentiary. From which sentence and judgment the defendant has appealed to this court.

The testimony of the state's witness, in substance, is as follows:

Ella Lemons stated she lived near Fletcher, Okla.; she was 15 years of age on the 6th day of October, 1927—

"I went to Fletcher with my parents on the night of November 19, 1927; I met Fay Shilling, my cousin; we were walking up the street on the north side; Easton Skinner came up and began talking with Fay, and Fay wanted to know if I wanted to go driving; Fay said she would go if I would; I refused at first; Easton Skinner then named several boys and asked if I would go with them, and I refused; he then stated Marshall Upchurch was a nice boy and if he went and tried to do anything out of the way that he would make him treat me nice; I decided to go, and Skinner went for the defendant, and we met down in front of a restaurant and drove out south of Fletcher and came back for water for the car, and drove out of town again; when we had gone about halfway between Fletcher and Elgin, I asked where we were going, and the defendant said to Elgin to get a coke; we went to Elgin, got the coke, and started back; the defendant then turned the car and drove a quarter of a mile off the highway and

stopped; it was dark, and the defendant turned the car lights out; the defendant then got on my lap, and I called to Skinner to help me and he just laughed; I then called Fay and she said Skinner was holding her; Skinner and Fay were in the back seat; I struggled with the defendant and finally he heard another car coming and let me loose; I opened the door to get out, and defendant grabbed me and I slipped out of my coat; when I got out I went behind the car and called Fay; the defendant came back and told me to get back in the front seat; Skinner then pulled Fay out of the car and the defendant got in the back seat; the defendant got hold of me and pulled me over the back of the seat; I fought all I could, and he held me in the corner until the sweat was dripping off me; he then had intercourse with me while we were in the back seat; I then got out of the car and went to where Fay and Skinner were; Skinner and Fay were north of the car, and the defendant drove up there and turned around and came back and waited until Fay and Skinner got back in the car; the defendant then drove about a half mile east of Elgin, and again stopped the car about a quarter of a mile off the highway; Skinner got out of the car and tried to get Fay out, and I hit him on the face and told him to let Fay alone; he then got in the car, and he and Marshall, who were in the front seat, had a conversation about something; the defendant then drove to within about a mile of Fletcher and stopped the car again; Skinner got out and told Fay he had something to tell her and got hold of her hand and pulled her out of the car; the defendant wanted to get back to town, but I did not want to go until Fay came back; the defendant then said he would take me to town and come back for Fay; he drove me to town, and I told my mother and sister they had treated me rough, but I did not tell them the defendant had intercourse with me."

M. M. Lemons, the father of the prosecuting witness, testified that his daughter told him who she had been out with, and that the defendant had mistreated her; the next morning they got Shilling and filed an assault and bat-

tery charge against Upchurch and Skinner; and then a charge of rape was filed against the defendant.

Mrs. Ada Lemons testified in substance the same as the father of the prosecuting witness, with reference to her daughter coming in and telling her she had been mistreated, and treated rough by the defendant.

Lillie Lemons stated:

"I got with Fay that evening and went to town, and the next time I saw her was about 10 o'clock; she was crying and I asked what was the matter, and she said she had been out with Marshall Upchurch and that he had mistreated her; on Monday night there was no one at the house except me and Ella, and while we were getting supper Ella told me all about it."

Fay Shilling, called as a witness, in substance stated about the meeting of Easton Skinner and Pete Wilson on the street and the ride being suggested; that Skinner named a number of boys for Ella to go with, but she refused to go, and finally he named Marshall Upchurch, and said he would make Marshall treat Ella nice, and Ella finally consented to go; they started out of town, and came back and got some water for the car, and when they started again Ella asked the defendant where they were going, and he said they were going to Elgin to get a coke; they went to Elgin and got the coke, and when they started back they turned west when about a mile from town and stopped; Ella told them she wanted to go home; the road they stopped on was not a well-traveled road; it was dark, and when the car stopped the defendant turned off the lights; when the car stopped the defendant got on Ella's lap, and Ella called to Skinner for help and he just laughed, and said Marshall would not hurt Ella—

"Ella called to me and I started to help her, and Skinner grabbed my hands and would not let me; the defend-

ant bent Ella's neck over the seat; about that time something was said about a car coming, and Marshall let Ella alone, and Ella got out of the car, and defendant grabbed her by the coat; she slipped out of the coat and went back of the car; I tried to get away from Skinner but could not; the defendant then went around the car and got Ella and threw her back in the car; Skinner then pulled me out of the car, and we went down the road, and the next thing I saw of Ella she was coming down to where Skinner and I were; the defendant drove down to where we were, and Ella and I got in the back seat and Skinner and the defendant in the front seat, and the defendant drove east towards Elgin and stopped the car about a quarter of a mile off the highway; Skinner got out and tried to pull me out, and Ella hit him and told him to leave me alone, and Skinner then got back in the car; we then drove toward Fletcher; and when we were about a mile east of Fletcher turned off the highway and the defendant stopped the car, and Skinner got out again and asked me to get out, said he had something he wanted to tell me; I refused to get out, and he jerked me out of the car and went back of the car; Marshall Upchurch then took Ella to town; in about fifteen minutes Marshall returned alone; Ella was the first one I saw when I got to town."

Dr. E. B. Dunlap testified that on Wednesday, the 23d of November, 1927, Mrs. Lemons and Mrs. Shilling brought their daughters to him for examination, for the purpose of discovering whether they had had sexual intercourse; that there was no swelling or abrasion; that the swelling or abrasion would disappear in three of four days; the hymen was ruptured.

Easton Skinner testified to meeting the girls on the street in Fletcher; he asked the prosecuting witness if she would go with Marshall Upchurch, and then details the route they traveled until they stopped the car—

"Fay and I were in the back seat; I did not see Marshall get on Ella's lap, or pull her coat off, or pick her up

and put her back in the car; Fay and I got out of the car and went behind it about 20 feet; we were out of the car about 15 minutes; I did not hear Ella cry or scream; Ella did not call me to make Marshall behave; I heard no noise in the car while we were out of the car; I never heard Ella say she wanted to go home; the fourth stop made by the defendant was near Fletcher; the defendant drove the prosecuting witness to town and came back for Fay and me."

The defendant, testifying in his own behalf, stated the route traveled until the car stopped out on a country byroad.

Then stated:

"I did not get on Ella's lap; she did not jump out of the car, nor did I grab her coat and pull it off; I did not put her back in the car; I did not pull her over the front seat to the back seat; Ella made no complaint that I knew of about my treatment to her; we were stopped about 20 minutes; I did not hear Ella call to Skinner for help, nor did she call to Fay for help; Easton and Fay got out of the car and went south; Ella got out of the car, and got back in the car at my request; I asked Ella if she did not think we had better go and come back for Fay; she did not want to go, but finally got in the car and we went to town; I could not tell what my object was in going west from Elgin; I had not been on that road before; when I stopped Ella asked me what time it was; I don't remember what I was talking to her about; I made no indecent proposal to her; I might have tried to love and caress her; Ella made no complaint of my conduct; she did not get out of the car at that place; I stopped the car again east of Elgin, then drove on and stopped again on another poorly traveled road; I don't know why I went down that road; Skinner got out and asked Fay to get out; I don't know whether he pulled her out or not, I was not looking; I left them because I thought it was time to take the other one in; Ella wanted to wait for the other girl, but I insisted on taking her

home; I cannot tell you what my purpose was in making the three stops."

M. C. Upchurch testified he was the father of Marshall Upchurch, the defendant; that the lights on the automobile went off when the car stopped.

This is, in substance, all the testimony offered by the parties.

The defendant has assigned several errors alleged to have been committed by the trial court. The first assignment relates to the action of the court in overruling the demurrer of the defendant to the information. The defendant discusses the first and second assignments together and insists that the information was insufficient to charge a crime against the defendant.

After an examination of the information we cannot agree with the contention of the defendant. Section 1834, C. O. S. 1921, defines "rape" as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

"First. Where the female is under the age of 16 years."

The first paragraph is the one that applies to the charge in this case. The charging part of the information is as follows:

"That at and within said county and state, on the 19th day of November, 1927, Marshall Upchurch, then and there being, did then and there wilfully, unlawfully and feloniously accomplish an act of sexual intercourse wth Ella Lemons, then and there being under the age of 16 years, and not then and there the wife of the said Marshall Upchurch."

This information sufficiently charges the crime of statutory rape, and the substance of the charge is in the language of the statute. The demurrer to the information was properly overruled.

The third and fourth assignments have been argued together by the defendant. The defendant insists that the court erred in permitting testimony to be introduced in the case showing the action of all of the parties, including Easton Skinner and Fay Shilling, and what took place between all of the defendants. From an examination of the brief of the defendant, we find he failed to set up or point out specifically what was introduced in the record that tended to prejudice the rights of the defendant. The testimony contained in the record has been carefully read, and it is detailed by the prosecuting witness as well as the defendant, where the parties got together, and the different roads traveled, and places where they stopped. This testimony was necessary in order to place the defendant at the different places where he is shown by the record to have been, and for the state to maintain its theory of the case it was necessary to show where the parties were at the time of the alleged cohabitation, and where the other parties were when the alleged offense took place. We do not think the court erred in admitting this testimony.

The defendant does not set out in his brief the contents of the evidence, the admission of which he claims was prejudicial to his rights. His failing to set out the evidence in full leaves him in no position to urge this contention.

The defendant also complains that he was not allowed to ask impeaching questions of the witness Fay Shilling. However, he does not set out in his brief what the ques-

tions were or what he expected to prove by the questions. Where the defendant complains of the action of the court in refusing to permit him to propound certain impeaching questions, it is his duty to show and set out in full what the rejected evidence would have been. Stouse et al. v. State, 6 Okla. Cr. 415, 119 Pac. 271.

In Wood v. State, 4 Okla. Cr. 436, 112 Pac. 11, 45 L. R. A. (N. S.) 673, in the second paragraph of the syllabus, the court said:

"Objections to testimony made in the lower court will only be considered by this court where the precise error complained of is clearly pointed out in the brief of counsel, with a statement of the testimony objected to, so as to enable this court to understand the questions presented. The brief must also contain a statement of the page of the record on which the matter complained of can be found, and it must also clearly state the argument of counsel and contain the authorities relied upon to sustain the objections made in the lower court."

The defendant in his fifth assignment complains of the action of the court in summoning and impaneling the jury. The record shows that the defendant filed a motion for continuance based principally upon the ground that the regular panel had been present and heard a companion case, known as the Skinner Case, and a previous trial of the defendant on the same charge he was called for trial in this case, and for that reason the jurors were disqualified. The county attorney agreed that the regular panel of jurors were disqualified, and the court dismissed the regular panel and ordered a special venire; this was known to the defendant and his counsel, who made no objection, nor was any motion made to quash the special panel; the jury was called, examined, and accepted by the defendant before he had exhausted all his peremptory

challenges. In the absence of any special showing to the contrary, the presumption is that the proceeding was regular, and that the officers did their duty.

Section 3526, C. O. S. 1921, is as follows:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing and summoning or impaneling the same resulted in depriving a party litigant of some substantial right: Provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

Section 3518, C. O. S. 1921, says:

"At any time during the term of any court, after the petit jury has been drawn and summoned in the manner herein provided for, when, for the trial of any cause, civil or criminal, the regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct that an open venire be issued to the sheriff or other suitable person, for such number of jurors as may be deemed necessary, to be selected from the body of the county, or from such portion of the county as the court may order: Provided, that no person shall serve as a talesman oftener than once a year."

Moore v. State, 9 Okla. Cr. 9, at page 12, 130 Pac. 517, 519, thoroughly discusses the question, and says:

"The contention of counsel for appellant is that he had a right to a full panel of jurors duly drawn from the

jury box, as selected by the jury commissioners, and that the trial court was without authority to order the sheriff to summon additional jurors upon an open venire from the body of the county. To sustain this contention would be to ofttimes subject the trial courts to great and unnecessary delay in drawing and summoning talesmen. This objection was passed upon in an elaborate opinion by Judge Doyle in the case of Watson v. State, 9 Okla. Cr. 1, 130 Pac. 816, decided at the present term of this court; and we there held that the objection was not well taken. Even if the matter had never been decided by this court, it is settled by the provisions of the statute."

The jury in this case was selected and impaneled in substantial compliance with the law, and no error appearing in the record to the prejudice of the defendant, and the defendant having failed to show, either by his motion for a new trial or specification of errors, or in his brief, that he was not accorded a fair and impartial trial, or that the verdict was reached by prejudice or passion, or that any of the jurors were guilty of misconduct, we hold that the fifth assignment was without merit.

In the sixth and seventh assignment of errors the defendant discusses the question of the insufficiency of the evidence. The evidence on behalf of the state is sufficient to warrant the jury in finding a verdict of guilty if they believed the testimony of the state. The evidence is conflicting. On behalf of the state it shows a crime was committed. The prosecuting witness in this case is corroborated by the other witnesses in each and every particular save and except what she states took place at the time the offense alleged to have been committed by the defendant on the prosecuting witness in the rear seat of the car the parties had driven to the country in. All admit the road traveled, and the stops made at the place where the prosecuting witness says the car was stopped. It is strikingly singular if no offense was committed, and the

parties left the town of Fletcher for the sole purpose of going for a drive, that each time the defendant stopped his car he turned off from the public highway on a byroad where there was little travel. Some comment is made upon the fact that the defendant wanted to take the prosecuting witness to town and she did not desire to go until her cousin Fay Shilling was ready to go. When this conversation is alleged to have taken place the cohabitation with the prosecuting witness, if it occurred at all, had already taken place, and perhaps the defendant was desirous of taking her back to town and leaving the other parties out in the country, which he says he did, and returned for Miss Shilling and Mr. Skinner. The jury is the sole judge of the credibility of the witnesses and weight it will give to their testimony, and where the testimony is conflicting, as in this case, this court will not disturb the verdict of the jury, if there is any competent evidence upon which the jury may reasonably conclude the defendant is guilty.

The defendant also complains of the instructions of the court. The instructions are not set out in the brief of the defendant. We have carefully examined the record and considered in their entirety the instructions substantially declare the law as applied to the facts in this case.

The defendant's motion for a new trial was properly overruled. The defendant in his eleventh assignment of error complains that the sentence and judgment of the court, based on the verdict of guilty returned by the jury, is excessive and should be modified. The testimony in this case is sufficient to sustain the verdict of the jury. There are no fundamental or prejudicial errors in the record of sufficient merit to warrant a reversal.

EDWARDS, P. J., and CHAPPELL, J., concur.